# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center,<br><br>Plaintiff,<br><br>v.<br><br>Spencer Cox, *et al.*,<br><br>Defendants. | Case No. _____ |

I, Adina Zahradnikova, declare as follows:

1. I am the Executive Director of the Disability Law Center (the "DLC").

2. The DLC is headquartered in Salt Lake City, Utah.

3. The DLC's mission is to advance and enforce the legal rights, choices, and opportunities of Utahns with disabilities.

4. The DLC's vision is for a just society where Utahns with disabilities are free from stigma, discrimination, and abuse. They have the authority to make their own decisions and the same rights and opportunities as those without disabilities. Their voices are heard, which inspires discussion and motivates change. Utahns with disabilities have equitable access to supports and resources needed to be as independent as possible and full participants in their communities.

5. The DLC has been designated by the Governor of Utah as Utah's Protection

and Advocacy agency (P&A). As Utah's P&A, the DLC has an obligation to affirmatively carry out the functions Congress identified in the operative P&A statutes.

6. One of these statutes is the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "DD Act").

7. The DD Act's purpose "is to assure that individuals with developmental disabilities and their families participate in the design of and have access to needed community services, self-determination, independence, productivity, and integration and inclusion in all facets of community life, through culturally competent programs" including the protection and advocacy agencies like the DLC.

8. The DD Act defines those with developmental disabilities as those with "a severe, chronic disability" due to a mental or physical impairment that occurs before the individual turns 22 that "results in substantial functional limitations in 3 or more" major life activities, and these "reflect the individual's need for a combination and sequence of special, interdisciplinary, or generic services, individualize supports, or other forms of assistance that are lifelong or extended duration."

9. Under the DD Act, the DLC is tasked with representing the population S.B. 199 seeks to create a separate category of guardianships for that removes their independence and self-determination.

10. Specifically, all individuals with intellectual disabilities are considered DLC constituents for purposes of the DD Act.

11. The DLC relies on an advisory council composed of consumers of mental health services, family members, providers, attorneys, and other interested community

members.

12. The DLC's advisory council accepts suggestions and input from people with disabilities and their family members and uses that feedback to help shape DLC advocacy priorities.

13. Additionally, the DLC's 16-member elected governing board counts among its members several Utahns with disabilities and their family members. The governing board is intimately familiar with the needs of individuals with intellectual and developmental disabilities, as at least half of the board is a family member (sibling or parent) of a person with an intellectual or developmental disability or leads an organization that represents the population.

14. Under the DD Act, DLC has a statutory duty to advocate for and protect the rights of people with disabilities and to investigate incidents of abuse and neglect of people with disabilities.

15. The DLC advocates on behalf of its constituents: the over 500,000 Utahns with disabilities. This advocacy includes working to expand the availability of healthcare, increase access to education, and secure voting rights for those individuals.

16. In the area of guardianship, the DLC provides the following services: self-advocacy education, a legal clinic that works with people subject to guardianship and provides information about their rights and choices and how best to protect their autonomy, general information for individuals, referrals to other entities who can assist, outreach to schools, providers and families to educate them about alternatives to guardianship and supported decision-making options, and legal representation to adults under or at risk of abusive or

unnecessary guardianships .

17. Moreover, the DLC's guardianship-related work furthers our mission of protecting the legal rights, choices, and opportunities of Utahns with disabilities. To that end, we have chosen to focus on particularly egregious cases, in which a protected person is experiencing neglect at the hands of their guardian, where their wishes and desires are being completely ignored and/or controlled by their guardian, or where they are being forced or limited in ways that are disallowed under the law, such as re: sterilization or having their association with loved ones, partners, and family members limited.

18. One of the ways the DLC engages in this work is through individual case work from attorneys on our staff. This includes meeting with individuals currently under guardianship, taking referrals from state agencies, and providing technical assistance to service providers. Intervention in guardianship cases happens at various levels, including full representation, intervening with the court as an interested party, requesting a court visitor be assigned, and helping individuals to file documents on their own.

19. The DLC's website advertises these services to the public.

20. Advocating for protections to guard against unnecessary and/or overly restrictive guardianships has also been reflected in systemic aspects of the DLC's work. For example, in a prior settlement agreement with the State of Utah involving a class of individuals with intellectual and developmental disabilities, the DLC specifically included protections for the class to ensure the State used alternatives to guardianship in determining the preferences of individuals to live in community-based settings or an institution.

21. DLC has a specific, finite, grant under the DD Act that is to be used

specifically to serve people with intellectual and developmental disabilities. Many of the other funding sources on which DLC relies are designated to serve other disability populations and cannot be used on work to serve this population. Therefore, the resources available to represent and otherwise serve people with intellectual disabilities are limited by factors outside of DLC's control, and the more resources dedicated to serving people subject to or at risk of S.B. 199 guardianship proceedings, the less funding is available from our DD Act grant to support people with intellectual disabilities in other areas such as abuse and neglect investigations, employment discrimination, and housing discrimination.

22. Approximately 1,000 guardianship petitions for adults with disabilities are filed every year in Utah.

23. In the past four years, the DLC received 359 calls related to guardianship, including requests from people facing guardianship petitions or are already under guardianship.

24. In that same timeframe, the DLC has provided direct legal services to 36 individuals, including some who might be classified by a physician or psychologist as having a severe intellectual disability.

25. Having represented clients with intellectual disabilities with the guardianship process in Utah courts, the DLC foresees the risks that potential wards subject to SB 199 will face in guardianship proceedings and beyond. These risks include:

    a. A higher risk of a full guardianship being employed, where a limited guardianship would suffice.

    b. A higher risk that a potential ward cannot effectively communicate with the

       court his or her objections to the guardianship, to the selection of the guardian, or the failure to require counsel.

    c. A higher risk wards will be unable to report abusive behavior from their guardian to the DLC.

26. People with disabilities are already at disproportionate risk of having their right to make their own decisions and control their own lives stripped by courts or family members who believe their disability makes them incapable of doing so, or exposes them to risk of harm or exploitation.

27. SB 199 significantly increases these risks because it carves out DLC constituents with "severe intellectual disabilities" to receive fewer rights and less process than any other person who would be potentially subject to a guardianship.

28. As a result of SB 199's proposal and passage, the DLC will be irreparably harmed by the resources it has expended and will continue expend that were previously dedicated to other matters to reduce the number of Utahns subject to the discriminatory process created by SB 199.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 18th day of April, 2025 at Salt Lake City, Utah.

_____
Adina Zahradnikova