Exhibit 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center, | |
| Plaintiff, | |
| v. | Case No. _____ |
| Spencer Cox *et al.* | |
| Defendants. | |

## <u>DECLARATION OF JONATHAN GERALD MARTINIS, ESQ.</u>

I, Jonathan Gerald Martinis, Esq., hereby declare and state as follows:

1.    My name is Jonathan Gerald Martinis.

2.    I have actual knowledge of the matters stated herein. If called to testify in this matter, I would testify truthfully and based on my expert opinion.

## I.    BACKGROUND AND QUALIFICATIONS

3.    I am employed as the Senior Director for Law and Policy of the Burton Blatt Institute at Syracuse University (BBI), which is dedicated to improving the lives of people with disabilities across the United States and internationally.[1]  My Curriculum Vitae is attached.

---

[1] I am also a Project Director of the National Resource Center for Supported Decision-Making (www.supporteddecisionmaking.org). However, I am participating in this case on my own time and have not used Syracuse, BBI, National Resource Center, or federal funds in this matter.

4.      I regularly work with, present to, and advise people with disabilities, families, state agencies, public and private organizations, judges, attorneys, professionals, and others on guardianship, self-determination, and supporting people with disabilities.

### A.      Academic Work

5.      I have presented on guardianship, self-determination, and supported decision-making to judges in Tennessee, South Carolina, Idaho, Nevada, Virginia, Texas, Georgia, Washington, DC, and Missouri. I have also provided training to people with disabilities, families and professionals — including attorneys, Medicaid Waiver case managers, Adult Protective Services workers, teachers, medical and mental health professionals, Vocational Rehabilitation counselors, and others — across the United States, including presentations to people with disabilities, family members, and professionals in Utah.

6.      I have written or co-written over 60 journal books, articles, monographs, brochures, and other publications on guardianship issues.

### B.      Previous Legal Representation

7.      I also regularly represent people with disabilities in guardianship and other proceedings.

8.      For example, in 2013 I represented Margaret "Jenny" Hatch, a person with intellectual disabilities and a measured IQ of 49, in a trial to end her

guardianship. At trial, Ms. Hatch showed that she has the capacity to make her own decisions and direct her life, using supported decision-making. The court then found that Ms. Hatch did not meet the criteria for a guardianship, and re-instated her rights.[2] Ms. Hatch has lived without a guardian, and with support, in the years since.

9.    In 2015, I was the lead author of an amicus brief to the Supreme Court of Texas in a case involving the guardianship of an individual with intellectual disabilities.[3]

10.    In 2016, I was lead counsel for Ryan King, a person with intellectual disabilities and a measured IQ of under 40. Mr. King demonstrated that he has the capacity to make his own decisions and direct his life, with support from his family and others. The Court then terminated Mr. King's guardianship, and Mr. King has lived without a guardian, and with support, in the years since.[4]

11.    In 2021, I was lead counsel for Marie Bergum, a person with intellectual disabilities, whose conservatorship was terminated based on her use of supported decision-making.[5]  Ms. Bergum has lived without a guardian, and with support, in the years since.

---

[2] *Ross and Ross v. Hatch*, No. CWF-120000-426 (Va. Cir. Ct. 2013).
[3] *In re Guardianship of Pers. & Est. of Ryan Keith Tonner,* 513 S.W.3d 496 (Tex. 2016).
[4] *In re Ryan Herbert King*, No. INT 249 (D.C. Super. Ct. Prob. Div. 2016).
[5] *In re Conservatorship of Marie Bergum*, No. PR19PR00378 (Cal. Super. Ct. 2021).

12.     I have also advised attorneys and parties in cases involving guardianship in New York, New Jersey, Tennessee, Wyoming, Missouri, Kansas, Kentucky, Virginia, Maryland, Washington, DC, Vermont, Ohio, California, Florida, Indiana, Rhode Island, and Maine.

### C.    Previous Testimony

13.     I have submitted expert affidavits and/or reports in guardianship cases in Indiana, Tennessee, Florida, and Wyoming.[6]

14.     I have also been appointed, qualified, and testified as an expert in guardianship cases.

15.     I evaluated the respondent to a petition for guardianship, submitted a report, and was qualified and testified as an expert in a Michigan case, *In the Matter of Linda VanWormer*, Probate Court, Wayne County (MI) Case No: 2011-771094-DDc. At trial, I was qualified as an expert and opined that Ms. VanWormer effectively used supported decision-making to make her own decisions, and did not need a guardian. The Court declined to order Ms. VanWormer into guardianship, citing my report and testimony as persuasive.

16.     I was appointed in two guardianship cases before the District of Columbia Superior Court, Probate Division, to evaluate whether a person could use

---

[6] *In re Guardianship of Jamie Lavonne Beck*, No. 89CO1-1011-GU-025 (Ind. Cir. Ct. 2018); *In re Guardianship of Tyler Borjas*, No. 2017002056GD02 (Fla. Cir. Ct. 2020); *Tennessee, Dep't of Human Servs. v. Story & Avery*, No. 2022-CV-5 (Tenn. Ch. Ct. 2022); *In re Guardianship & Conservatorship of Emery Scott Olson*, No. 45-341 (Wyo. Dist. Ct. 2021); *In re Guardianship & Conservatorship of Edward J. Lorenz*, No. 48-543 (Wyo. Dist. Ct. 2022).

make their own decisions with supports, and to provide my opinions to the Court. In one case, after evaluating the Respondent and reporting my findings, I helped the parties reach a settlement resulting in the person's guardianship being terminated.[7]  In the other, I was qualified as an expert and testified at trial, giving my opinion that the person effectively used supports to make decisions and did not require guardianship, after which the Court terminated her guardianship.[8]

### D.     Supported Decision-Making

17.     I have also worked directly with individuals with disabilities to help them develop and implement supported decision-making plans.

18.     I led a study to empower people with intellectual disabilities to use supported decision-making and analyzed the impact on their quality of life. The study found that people with intellectual and developmental disabilities ("I/DD") who used supported decision-making demonstrated increased independence, improved decision-making skills, and enhanced quality of life.[9]

## II.     EXPERT OPINIONS

### A.     Many people seek guardianship because they believe it is the only option, without understanding the risks and alternatives.

---

[7] *In re Tanya Anisha Powell,* No 2015 INT 529 (D.C. Super. Ct. 2017)

[8] *In re Tecora Micklel*, No. 2015 INT 291 (D.C. Super. Ct. 2018).

[9] Martinis, J. & Beadnell, L. (2021). "I learned that I have a voice in my future: Summary, findings, and recommendations of the Virginia supported decision-making pilot project. (2021). Available at https://bbi.syr.edu/wp-content/uploads/application/pdf/2021_virginia_SDM_pilot_project.pdf.

19.     I have represented, advised, and opined on the abilities of dozens of people with intellectual and developmental disabilities who wish to change, avoid, or end guardianship.

20.     In many of these instances, family members sought guardianship because they were told that it was the only way to stay involved in their adult child's life. A study I co-led concluded that schools and medical providers were top referrers of parents to guardianship proceedings.[10]

21.     Many well-meaning family members seek guardianship because they believe it is the only option, without understanding the risks and alternatives. For example, many guardians do not realize that the court has the power to remove the parent but retain the guardianship, with someone else – often a complete stranger – as the guardian.

22.     As another example, many guardians do not realize that the guardianship will outlive them. When a parent dies or becomes too ill to continue in the role as guardian, the guardianship will survive – but with a new guardian. Here too, this guardian may be a complete stranger.

23.     Of course, abuse and neglect can also occur within guardianships, and I have represented and opined on cases where this was occurring. Sadly, abuse and

---

[10] Jameson, M., Riesen, T., Polychronis, S., Trader, B., Mizner, S., Hoyle, D, & Martinis, J. (2015). Guardianship and the potential of supported decision-making for individuals with disabilities. *Research and Practice for People with Severe Disabilities*, 40(1), 1-16.

neglect are not limited to professional or unrelated guardians. Abuse and neglect can and do occur where guardians are close family members of the disabled person.

**B.    There are many alternatives to guardianship which can be used by people with a wide range of disabilities, including people with significant intellectual and development disabilities ("I/DD").**

24.    Guardianship is not the only option for people with disabilities, including people with significant intellectual disabilities.

25.    Other options include powers of attorney, representative payees, health care proxies and advance directives, and supported decision-making.

26.    Each of these approaches allows the disabled person to maintain self-determination and rights as much as possible, and to expand support options.

27.    I have worked directly with people who have IQ scores measured below 50, people who do not speak, and people who have challenging and complex behaviors and support needs, to establish and use supported decision-making agreements and avoid guardianship.

28.    I have also looked at medical charts and diagnoses of many of these people. Many of them would readily be labeled as having "severe intellectual disability," yet have demonstrated, sometimes in contested judicial hearings, that they do not need guardians.

29.     Research and scholarship support my observations that that people with I/DD can use supported decision-making in ways that are consistent with their unique abilities, needs, and preferences to make life decisions.[11] People with I/DD can and do use supports to decide how to manage their money,[12] whether to engage in social and romantic relationships,[13] and to consent to and take part in medical and mental health care[14] and legal representation.[15]

**C.      Research and experience show that guardianship is associated with negative outcomes, and less protection, than self-determination.**

30.     Guardianship is, by definition, a rights-restricting mechanism. It strips a person of some or all of their self-determination and autonomy, and has been

---

[11] See e.g., Rosie Harding & Ezgi Taşcıoğlu, *Supported decision-making from theory to practice: Implementing the right to enjoy legal capacity*. 8 Societies 1, 12–15 (2018); Michelle Browning et al., *A process of decision-making support: Exploring supported decision-making practice in Canada*, 46 J. OF INTELL. & DEVELOPMENTAL DISABILITY 138, 139 (2020).

[12] THE CENTER FOR PUBLIC REPRESENTATION, SDM and Financial Decisions, https://supporteddecisions.org/getting-started-with-supported-decision-making/sdm-and-financial-decisions/.

[13] See e.g., Alexander Boni-Saenz, *Sexuality and incapacity*, 76 OHIO STATE L.J. 1201; Jasmine Harris, *The Role of Support in Sexual Decision-Making for People with Intellectual and Developmental Disabilities*, 77 OHIO STATE L.J. 83 (2015); Lucy Series, *Relationships, autonomy, and legal capacity: Mental capacity and support paradigms*, 40 INT'L J.L. & PSYCH. 80 (2015); Simo Vehmas, *Persons with profound intellectual disability and their right to sex*, 34 DISABILITY & SOC'Y 519, 526–33 (2019).

[14] See e.g., Gavin Enck, *Healthcare decisions are always supported decisions*, 21 AM. J. OF BIOETHICS 29, 30 (2021) ("SDM is applicable to a wide rnge of patients"); ROBERT SAPOLSKCY, BEHAVE: THE BIOLOGY OF HUMANS AT OUR BEST AND WORST (2017); Kokanovic, et al., *Supported decision-making from the perspective of mental health service users, family members supporting them, and mental health practitioners*, 52 AUSTRALIAN & NEW ZEALAND J. OF PSYCHIATRY 826 (2018); Michelle Browning et al., *Supported decision-making: Understanding how its conceptual link to legal capacity is influencing the development of practice*, 1 RSCH. & PRAC. IN INTELL. & DEVELOPMENTAL DISABILITIES 34 (2014).

[15] See e.g., Piers Gooding et al., *Supported decision-making in criminal proceedings: A sociolegal empirical study*, 34 J. OF DISABILITY POL'Y STUD. 28 (2023).

described as a "civil death"[16] and "the most punitive civil penalty that can be levied against an American citizen."[17]

31.    There are, of course, times when it is appropriate for people to lose their right to make decisions through guardianship or other legal proceedings. However, research, scholarship, and best practices recognize that individuals, courts, and public and private agencies should consider whether people can use supports or less-restrictive alternatives to make their own decisions before taking action to remove their rights through guardianship.

32.    Decades of research have shown that stripping people of their civil personhood through guardianship has negative consequences, even when the person has significant intellectual disabilities, and even in the absence of abuse or ill intent.

33.    People exercise self-determination when making choices that shape their lives.[18] Placing a person under guardianship restricts the right to self-determination. Research shows that people with I/DD who exercise more self-determination have a better quality of life

---

[16] e,g, Robert Dinerstein, Implementing Legal Capacity Under Article 12 of the UN Convention on the Rights of Persons with Disabilities: The Difficult Road from Guardianship to Supported Decision-Making.19 HUMAN RIGHTS BRIEF, 8 (2011).
[17] H.R. REP. No. 100-641, at 1 (1987).
[18] See e.g., Peter Blanck & Jonathan G. Martinis, "The Right to Make Choices": The National Resource Center for Supported Decision-Making, 3 INCLUSION 24 (2015).

34.     For example, studies have repeatedly found that people with I/DD who are more self-determined — those who make more decisions — are more likely to be independent, employed, and active in their communities.[19]

35.     Studies have also long shown that people with I/DD who exercise more self-determination are better able to recognize and avoid abuse.[20]

36.     The National Core Indicators Study found that, among similarly situated people with I/DD, those *without* guardians were more likely to live in their own homes, work, be active members of their communities, have their rights respected, work, date, and marry than those *with* guardians.[21]

37.     By the same token, research shows that the loss of self-determination "can be as harmful as having it is helpful."[22] One early study found that people

---

[19] See e.g., Karen Shogren et al., *Relationships between self-determination and Postschool outcomes for youth with disabilities*, 48 J. SPECIAL EDUC. 256 (2015); Laurie E. Powers et al., *My life: Effects of a longitudinal, randomized study of self-determination enhancement on the transition outcomes of youth in foster care and special education*, 34 CHILD. & YOUTH SERVS REV. 2179 (2012); Janette McDougall et al., *The importance of self-determination to perceived quality of life for youth and young adults with chronic conditions and disabilities*, 31 REMEDIAL & SPECIAL EDUC. 252 (2010).

[20] Linda Hickson et al., *Randomized control trial to evaluate an abuse prevention curriculum for women and men with intellectual and developmental disabilities*, 120 AM. J. ON INTELL. AND DEVELOPMENTAL DISABILITIES 490 (2015). Ishita Khemka et al., *Evaluation of a decision-making curriculum designed to empower women with mental retardation to resist abuse*, 110 AM. J. MENTAL RETARDATION 193 (2005); Ishita Khemka, *Increasing independent decision-making skills of women with mental retardation in simulated interpersonal situations of abuse*, 105 AM. J . ON MENTAL RETARDATION 387 (2000).

[21] Valerie Bradley & Dorothy Hiersteiner, *What do NCI data reveal about the guardianship status of people with IDD?*, THE NAT'L ASSOC. OF STATE DIRS.OF DEVELOPMENTAL DISABILITIES SRVS. AND HUMAN SRVS. RSCH. INST. (Apr. 2019), https://legacy.nationalcoreindicators.org/upload/core-indicators/NCI_GuardianshipBrief_April2019_Final.pdf.

[22] JONATHAN MARTINIS & PETER BLANK, SUPPORTED DECISION-MAKING: FROM JUSTICE FOR JENNY TO JUSTICE FOR ALL! 24 (2019).

with disabilities who were denied self-determination felt "helpless, hopeless, and self-critical . . . [and] will not behave because [they] can see no use in behaving."[23]

38.    Another study found that a lack of self-determination was associated with "self-handicapping behaviors" and decreased quality of life.[24]

39.    This research shows that ordering people with I/DD into guardianship, even with good intentions, may actually worsen "the negative behaviors and symptoms that led to the . . . proceeding in the first place."[25]

40.    Other scholarship has concluded that unnecessary guardianship can cause a "significant negative impact on . . .  physical and mental health, longevity, ability to function, and reports of subjective well-being."[26] For example, removing a person's right to make relationship choices can "isolate the individual by explicitly depriving [the person] of the right to make certain social decisions regarding how or with whom [they] will spend time."[27] Similarly, when people lose the right to make medical decisions, they "may get little information about [their] condition or treatment options."[28] In addition, people denied the legal right

---

[23] EDWARD L. DECI, INTRINSIC MOTIVATION 208 (1975).
[24] See e.g., E. Jones & S. Berglas, *Control of attributions about the self through self-handicapping strategies: The appeal of alcohol and the role of underachievement.* 4 PERSONALITY & SOC. PSYCH. BULL. 200 (1978).
[25] Peter Blanck and Jonathan G. Martinis, *"The Right to Make Choices": The National Resource Center for Supported Decision-Making* (2015), available at: https://meridian.allenpress.com/inclusion/article-abstract/3/1/24/234/The-Right-to-Make-Choices-The-National-Resource
[26] Jennifer L. Wright, *Guardianship for your own good: Improving the well-being of respondents and wards in the USA*, 33 INT'L J. L & PSYCHIATRY 350, 354 (2010).
[27] Leslie Salzman, *Guardianship for persons with mental illness – a legal and appropriate alternative?*, 4 ST. LOUIS UNI. J. OF HEALTH L. & POL'Y 279, 291 (2011).
[28] *Id.*

to make financial decisions may "become[] gradually disengaged from the management of those finances as well as the interactions with others involved in that management — banking, shopping, financial planning . . . even giving gifts to loved ones."[29]

41.    In sum, research and scholarship show that removing people with I/DD's right to make decisions through guardianship can subject them to "marginalization and isolation from mainstream society."[30] In contrast, self-determination can empower people to be "causal agents" in their lives,[31] able and authorized to make their own life choices and "reap the benefits from increased life control, independence, employment, and community integration."[32]

42.    Recognizing and respecting the right of people with I/DD to use supports to make their own choices and direct their own lives—including people whose cognitive capabilities are so limited that they are on the "margins of autonomy"[33]—is "compatible with, and may even promote, their overall wellbeing. By the same token, overriding someone's decision(s) out of concern for their best

---

[29] *Id.*
[30] *Id.* at 293.
[31] Michael L. Wehmeyer, *Self-determination and individuals with severe disabilities: Re-examining meanings and misinterpretations* 30 RSCH. & PRAC. FOR PERSONS WITH SEVERE DISABILITIES 113 (2005).
[32]  Blanck & Martinis, *supra* note 24, at 31.
[33] Andrew Peterson, Jason Karlawish & Emily Largent, *Supported decision-making with people at the margins of autonomy*, 21 AM. J. OF BIOETHICS 4, 10 (2021).

interests may, ironically, reduce their overall wellbeing, in part by undermining whatever autonomy they have."[34]

43.    My own decades of experience in this field support these research findings. For example, a client I represented was  told by her guardian, a parent, that she could never learn how to live independently, or to take public transportation, or improve her reading and writing skills. Her guardian refused to let her develop these skills that she desperately wanted to learn, and told her that her wishes were impossible. In the years since her guardianship ended, she has made great strides towards each of these goals, surrounded by people who believe in her abilities and help her learn and expand her skills. This development was being prevented by guardianship.

44.    Another client I represented was prevented, by her guardian (a parent), from working, attending her church, or interacting with friends on social media. In the years since her guardianship was terminated, she has worked and worshipped as she wants, and has spoken across the county on her experience.

**D.    Guardianship should only be imposed as a last resort.**

45.    Because of the risks of guardianship, it should never be the default.

---

[34] Walter Veit et al., *Evaluating tradeoffs between autonomy and wellbeing in supported decision-making*, 21 AM. J. OF BIOETHICS 21, 22.

46.     This is true even if the person has significant disabilities, and even if the person petitioning for the guardianship is a parent or close family member.

47.     This is true even if the person petitioning for guardianship is acting out of kindness and a desire to help the disabled person.

48.     There are too many risks, and too many other alternatives, for guardianship to be an appropriate default for anyone.

**E.     The due process protections in guardianship proceedings are important and can change the outcome of proceedings.**

49.     In my experience, and based on my research, due process protections in guardianship proceedings—including the right to counsel, to a neutral advocate, and to participate in proceedings—can change the course of guardianship proceedings.[35]

50.     In *In the Matter of the Guardianship of Everett Parker*, an appointed guardian ad litem ("GAL"), an attorney, interviewed the proposed ward, ascertained that he did not want to be ordered into guardianship, and informed the court of Mr. Parker's physical and medical condition and his desire to retain his rights.[36] The GAL recommended that the Court appoint an attorney to represent him, and hold an evidentiary hearing to determine if guardianship was necessary. The Court agreed, appointed counsel, and found that Mr. Parker did not meet the

---

[35] Martinis, J. & Theriault, M. (in submission). Wyoming is haunted by ghost guardianships: File reviews show state and system-wide denials of due process. *Journal on Disability Policy Studies.*
[36] *In the Matter of Josh Frauendienst.*, Wyo. (Laramie). Docket No. 49-443 (2021).

criteria to impose a guardianship. Without the advocacy of an outside supporter, the Court would not have learned that Mr. Parker did not want a guardianship, would have been denied critical information about his condition and interests, and may have ordered him into guardianship without a hearing or, at least, without a full understanding of his condition and interests.

51.    Another recent case in Wyoming further underscores the importance of counsel to ensure that the person at risk of guardianship understands the proceedings and has a chance to actually consider and form an opinion on the guardianship. In *In the Matter of Josh Frauendienst*,[37] the proposed ward "consented" to a temporary guardianship, without counsel, and the guardian moved to convert the temporary guardianship to a permanent one. But when an attorney appointed to represent Mr. Frauendienst explained, for the first time, what the guardianship meant, Mr. Frauendienst withdrew his consent, via his attorney. He had a real, meaningful opportunity to learn about and defend his rights, which were then restored.

52.    These are only two recent examples where a person having counsel or an advocate — whether appointed, volunteer, or retained — and the opportunity to understand and participate in proceedings, changed the outcome of the guardianship proceedings, and protected the disabled person's rights.

---

[37] *In the Matter of the Guardianship of Everett Parker,* Wyo. (Laramie), Docket No. 49-369 (2021).

53.    In my own practice, I have seen firsthand the impact of representation in guardianship cases.

54.    In addition to those described, above, in a Wyoming case in which I served as counsel, a person was put into guardianship without being served with process, appointed a GAL or attorney, and without a hearing, despite state law requiring all of these due process protections. Years later, we brought a petition to terminate the guardianship based on these failures and the Court did so. If I and my co-counsel had not learned of, or gotten involved in, this case the person would still be under guardianship.[38]

55.    In several cases where I have served as counsel, the Court and parties have remarked that such cases are usually handled quickly because the person with disabilities does not object to the appointment.

56.    In those cases, I have found (and replied) that this is because the person did not know they had a right to object, or did not want to oppose the will of a parent or other family member.

57.    In those cases, I took the time to explain to the person what is at stake in the case, in ways they can understand (often using accessible language or the assistance of a supporter). Once the person learned this, and was given an

---

[38] *In the Matter of the Guardianship and Conservatorship of Jared D. Sowers*. District Court, Platte County (WY), Probate No.: 2009-1 (2022).

opportunity to consider it and say what they want, they were able to tell me that they wanted to retain or regain their rights, allowing me the opportunity to represent them and advocate on their behalf.  As a result, people who could have had their rights removed instead had them reaffirmed and respected.

58.    In other words, having or being appointed counsel can be the difference between proposed wards losing or retaining their rights or even learning that their rights are at risk and worth protecting.

59.    This is particularly important because the issues at stake in guardianship cases — quite literally a person's right to decide where, how, and with whom they live, whether they work, and the type of medical care they receive —are tantamount to those at risk in criminal cases. It is accepted (and mandated) that Courts must appoint counsel to indigent criminal defendants because those rights are so fundamental that they should not be taken away unless the defendant has a meaningful opportunity to defend them. Should the same not be true in guardianship cases?

60.    I have no doubt that parents, family members, and others mean well when they seek guardianship, and want guardianship ordered in as little time, and with as little involvement, as possible.

61.    I also have no doubt that the legislature meant well when it passed Senate Bill 199, meaning to reduce the burden on parents by reducing the due process protections afforded their children.

62.    However, "[t]he greatest dangers to liberty lurk in insidious encroachment by men of zeal, well meaning but without understanding."[39]   This quote, almost 100 years old, remains true and looms large over Senate Bill 199.

63.    It is dangerous and wrong to remove a person's bedrock right — the right to counsel to help a person review and respond to allegations and evidence marshalled against them — based solely on their status, or presumed incapacity, as a person with a disability, whether that disability is considered to be "severe" or not.

64.    As shown, I have repeatedly represented and worked with people who, I believe, would qualify as having "severe" disabilities, but were able to state, clearly and unequivocally, that they did not want to be ordered into guardianship.

65.    I believe that, if any of those persons were subject to Senate Bill 199, they would not have had a full and fair opportunity to do so, and would be in guardianships they do not need.

66.    Therefore, we must look very carefully and critically at laws, like Senate Bill 199, that reduce or remove due process in the interest of emotion or expediency. Would it be appropriate to dispose of the need to obtain a warrant

---

[39] *Olmstead v. U.S.,* 277 U.S. 438, 480 (1928) (Brandeis, J., dissenting).

because to make things easier on diligent but overworked police officers? Would a obviate the need for service of process in order to accelerate a divorce where one spouse had abused the other? Should we dispense with trial in a contested personal injury case out of sympathy for the injured person?

67.    Of course not.  Therefore, people with disabilities — even those with "severe intellectual disabilities" — must be afforded the same due process rights as every other respondent in a guardianship case, including the opportunity to have counsel appointed. Any other result relegates them to a sub-class of people preordained to have "less rights than the typical convicted felon."[40]

## III.    CONCLUSION

68.    I will be happy to answer any questions the Court or parties may have regarding this Declaration.

69.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17 Day of April, 2025



_____

Jonathan Martinis, Esq.

---

[40] H.R. REP. No. 100-641, at 1 (1987).

# Jonathan Gerald Martinis, Esquire

571.247.6174        JGMartinisLLC@Gmail.Com

---

## Employment

**The Burton Blatt Institute at Syracuse University**, Washington, DC

*Senior Director for Law and Policy*: March 2016 - present

Lead development, implementation, and evaluation of systems and strategies empowering people with disabilities to lead independent, self-determined lives.

- Project Director of federally-funded National Resource Center for Supported Decision-Making, which provides nationwide advocacy and education to increase knowledge of, access to, and use of Supported Decision-Making.

- Principal Investigator of state-funded (VA) study that empowered people with developmental disabilities to develop and implement Supported Decision-Making plans, finding that those who did had improved quality of life.

- Project Director of private grant-funded (CA) project that empowered people with severe mental illness to develop and implement Supported Decision-Making plans, finding that those who did had improved quality of life.

- Project Director of state-funded (NY) project that evaluated state Supported Decision-Making program, finding that its methods were antithetical to principles of self-determination.

- Facilitated state workgroups in KS, MO, NC, CT, TN, NE, and VT dedicated to implementing Supported Decision-Making across service systems.

- Appointed by District of Columbia Probate Court to serve as independent expert in guardianship cases and advise the Court on Supported Decision-Making.

- Developed and lead Syracuse University College of Law Clinic on Self-Determination and Supported Decision-Making, which provides free legal representation to people with disabilities to ensure that they receive appropriate supports and services from government agencies.

**Quality Trust for Individuals with Disabilities**, Washington, DC

*Legal Director*: Oct. 2012 - March 2016

Managed and implemented litigation and advocacy initiatives of nonprofit organization.

- Successfully represented an adult with Down syndrome in the first trial to hold that a person with disabilities has the right to use Supported Decision-Making rather than be subjected to a permanent, plenary guardianship.

- Lead counsel in complaint resulting in systemic changes to language access policy of District of Columbia Department of Motor Vehicles.

- Published articles in national journals and presented at national, state, and local conferences on topics including Supported Decision-Making, Vocational Rehabilitation, Person Centered Planning, Health Care, and Special Education.

## Virginia Office for Protection and Advocacy f/k/a Department for Rights of Virginians with Disabilities, Richmond, VA

*Managing Attorney*: Jan. 2001- Oct. 2012
*Acting Director:* Feb. 2003 - April 2003
*Staff Attorney*: June 1998 - Jan. 2001
*Contract* Counsel: Nov. 1996 - June 1998

Led advocacy, litigation, and policy initiatives of state Protection and Advocacy system for people with disabilities.

- Lead counsel in systemic litigation against the Virginia Lottery, resulting in over 5,000 private businesses becoming accessible to people with disabilities.

- Lead counsel in class action against public transportation agency, resulting in thousands of Virginians receiving appropriate paratransit transportation.

- Lead counsel in actions against state Medicaid, mental health, education, and vocational agencies, securing individual services and systemic change.

- Led investigation of state institution's improper use of seclusion and restraint, resulting in system-wide reform.

## Grenadier, Davis and Simpson, P.C., Alexandria, VA

*Associate*: Feb. 1997- Feb. 1998

Lead counsel in multi-million dollar domestic relations cases. Managed and litigated firm's criminal and tort cases including child abuse (acquittal) and malpractice.

## Biberaj & O'Reilly, P.L.C., Leesburg, VA

*Associate*: Dec. 1995 - Feb. 1997

Lead counsel in criminal, tort, and domestic relations actions. Jury trials included armed robbery (acquittal), abduction (acquittal), and illegal use of firearm (acquittal).

# Education

## Hofstra University School of Law

Cumulative Grade Point Average: 3.21/4.00
Member: Hofstra Environmental Law Journal
        Hofstra Disabilities Law Clinic

## James Madison University

Bachelor of Science, *Cum Laude*
Pi Alpha Alpha (served as chapter Vice President and President)

## Admission to Practice

District of Columbia Court of Appeals

Supreme Court of Virginia

U.S. Court of Appeals for the Fourth Circuit

U.S. District Court for the Eastern District of Virginia

U.S District Court for the Western District of Virginia

## Selected Litigation

*Winborne, et al. v. Virginia Lottery*, 677 S.E.2d 304 (Va. 2009)
Virginia Lottery must comply with the ADA and ensure that private businesses selling Lottery tickets are accessible to people with disabilities.

*Winborne, et al. v. Virginia Lottery,* Va. Cir. (Richmond), Case No. H05-1168-4
Defendant enjoined to survey all 5,000+ businesses licensed to sell Lottery tickets to determine if they are accessible to people with disabilities. If a business is not accessible, defendant must require it to become accessible within one year or suspend its license.

*Brinn, et al. v. Tidewater Transportation District Commission,* 105 F.Supp. 2d 500 (E.D.Va. 2000) *aff'd* 242 F.3d 227 (4th Cir. 2001*)*
In class action, defendant permanently enjoined to provide next-day paratransit transportation to all eligible people with disabilities and pay attorneys' fees.

*Brinn, et al. v. Tidewater Transportation District Commission*, 113 F. Supp. 2d 935 (E.D.Va. 2000)
Plaintiffs can recover attorney's fees incurred attempting to collect a prior fee award and are entitled to post-judgment interest on fee award.

*County School Bd. of York County, Virginia v. A.L.*, 2007 WL 756586 (E.D.Va. 2007)
School Ordered to pay $70,739.50 in prevailing party attorneys' fees after plaintiff secured judgment requiring it to provide sign language interpreter and occupational therapy services.

*Ross and Ross v. Hatch,* Va. Cir. (Newport News), Case No. CWF-120000-426
Adult with Down syndrome has the right to use Supported Decision-Making to make her own life choices and live in the community rather than be forced to live in a segregated group home under a permanent, plenary guardianship.

*In Re: Ryan Herbert King*, D.C.Sup.Ct. (Probate) Case No.: 2003 INT 249
Adult with Intellectual Disabilities has the right to use Supported Decision-Making rather than be subject to a permanent, plenary guardianship.  Court terminated a 15-year guardianship and fully restored Mr. King's rights.

*In Re: Conservatorship of Marie Bergum*: Superior Court, Santa Cruz (CA), Case No: 19PR00378
Adult with Intellectual Disabilities has the right to use Supported Decision-Making to make life decisions instead of having a conservator make all decisions for her. Court terminated an over 10-year conservatorship and fully restored Ms. Bergum's rights.

*In the Matter of the Guardianship and Conservatorship of Jared D. Sowers*. District Court, Platte County (WY), Probate No.: 2009-1
> Guardianship terminated after 13 years because person was never served with process or otherwise provided with notice of the proceeding as required by state law.

*Dor Mohammed v. Department on Disability Services,* Case No. 2021-DDS-00005
> District of Columbia agency serving people with Intellectual Disabilities incorrectly found that applicant, an Afghani refugee, did not have an Intellectual Disability. Agency's decision reversed. Agency ordered to serve the person.

*D'Souza v. Department on Disability Services*, Case Nos. 2014-DDS-00005, 2014-DDS-00008
> District of Columbia Vocational Rehabilitation agency Ordered to pay Petitioner's full tuition and room and board at out-of-state vocational rehabilitation program. Agency improperly closed Petitioner's case after it appealed its refusal to pay for the program.

*Carney by Carney v. Department on Disability Services,* Case No. 2015-DDS-00001
> District of Columbia Vocational Rehabilitation agency Ordered to reimburse Petitioner after it wrongly required her to pay for her services. DC Office of Administrative Hearings had the authority to Order Respondent to make monetary reimbursement. Guardian had the authority to bring administrative appeal on Petitioner's behalf.

*VOPA v. Patrick W. Finnerty*, E.D.Va., Case No.: 3:04cv587
> Virginia's Medicaid agency enjoined to inform all eligible children of the existence and benefits of state's Early and Periodic Screening, Diagnosis and Treatment (EPSDT) program. Medicaid agency required to re-write its EPSDT manual and provide training to recipients and employees regarding EPSDT services.

*VOPA v. Dr. James Reinhard*, E.D.Va., Case No.: 3:04cv54
> Virginia Department of Mental Health enjoined to provide VOPA with the names and contact information of people with mental illness who were "ready for discharge" from state institutions so they can receive advocacy and other supports and services they need to live in the community.

*Hill v. Virginia Department of Corrections, et al.*, Va.Cir. (Richmond), In Chancery No. HS-948-4
> Defendants enjoined to provide a prison education program to a former inmate who is deaf, provide him with a certified sign language interpreter so he can participate in the program, and provide the program at a location accessible to him.

*Hatcherson-Ross v. Department on Disability Services,* Case No. 2018-DDS-00018
> Represented petitioner in appeal of Department's denial of eligibility for services. Case settled pre-trial when Department reversed its denial, found petitioner eligible for its services, and agreed to expedite petitioner's request for Waiver services.

*Jeppsen v. Department on Disability Services,* Case No. 2021-DDS-00004
> Represented petitioner in appeal of Department's denial of eligibility for services. Case settled pre-trial when Department agreed to find petitioner eligible for its services.

*Commonwealth v. Burke*, Va.Cir. (Arlington), Case Nos. CR99-924, 925
> Virginia Department of Corrections enjoined to admit inmate with Bipolar Disorder into its "Boot Camp" program and provide his medication. Department policy excluding users of psychiatric medication from "Boot Camp" unlawfully discriminated against people with disabilities.

*DRVD v. Southside Community Services Board*, W.D.Va., Case No.: 4:01CV0060
*DRVD v. Fairfax-Falls Church Community Services Board*, E.D.Va., Case No.: 01-1569-A
> In each case, defendant enjoined to provide DRVD with the names and contact information of its clients who were "ready for discharge" from state institutions so they could receive the advocacy and other services and supports they need to live in the community.

*Commonwealth v. Womack*, Va. Cir. (Danville), Case No.: Case No.: LP02-152
*Commonwealth v. Clay*, Va.Gen.Dist. (Mecklenburg), Case No.: 92001249
*Commonwealth v. Cockrill*, Va.Gen.Dist. (Norfolk), Case No.: C93-11193
> In each case, state institution Ordered to discharge person with disabilities to a community setting.

*Campbell v. Campbell, et al.*, Va.Cir. (Arlington), In Chancery No.: 97-585
> Hospital enjoined from medicating patient over her objection.

*DRVD and _____ v. _____* [names of plaintiff and defendant sealed], E.D.Va.
> Hospital enjoined to provide sign language interpreters to deaf patients, develop policy to provide appropriate auxiliary aids and services to deaf patients, and pay damages to patient who was denied sign language interpreter.

*C.P. v. Virginia Department of Education and Frederick County*, Special Education Due Process Hearing
> County School Board Ordered to provide student with assistive technology. State Board of Education Ordered to allow student to use assistive technology on statewide assessment.

*C.P. v. Virginia Department of Medical Assistance Services*, Medicaid Appeal
*A.M. v. Virginia Department of Medical Assistance Services,* Medicaid Appeal
> In each case, Medicaid agency Ordered to provide EPSDT coverage for an adapted bicycle.

*J.H. v. Virginia Department of Rehabilitative Services,* VR Appeal
*V.S. v. Virginia Department of Rehabilitative Services*, VR Appeal
> In each case, Vocational Rehabilitation agency Ordered to find applicants eligible for services because it used an incorrect legal standard when it found them ineligible.

*Wilson v. Wilkinson's Flowers, Inc.*, Va.Cir. (Chesterfield), Case No.: CH99-327
*Mahanes v. May Travel, Ltd.*, Va.Cir. (Richmond), Case No.: HK1776-1
> In each case, employer enjoined to pay back wages to employee terminated after disclosing disability status.

*Commonwealth v. Crawley*, Va.Gen.Dist. (Charles City), Case Nos.GC00-0145, 0146, 0147
  Court lacked subject matter jurisdiction to enter Not Guilty by Reason of Insanity verdict while defendant was incompetent to stand trial.  Not Guilty by Reason of Insanity verdict vacated. Defendant entitled to civil, rather than forensic, commitment.

*Commonwealth v. Wagner*, Va. Cir. (Stafford), Case No.: CR-04-947
  State and federal law require Court to allow defendant to be accompanied by her service animal in all proceedings.

*Commonwealth v. Plotkin*, Va.Cir. (Arlington) Case No: CR01-94
  ADA requires Court to move trial to venue accessible to defendant.

*Bell v. Bad Wolf Bar-B-Q, et al.*, W.D.Va., Case No.: 7:03CV00548
  Defendants enjoined to bring restaurant into compliance with the ADA, apologize to plaintiff for discriminating against him, and pay attorney's fees.

*Skidmore v. Lewis, et al.*, Va.Cir. (Allegheny), In Chancery No.: CH01-78
  ADA requires taxi company to transport plaintiff and his service animal.

## Expert Testimony

*In the Matter of Linda VanWormer*, Probate Court, Wayne County (MI) Case No: 2011-771094-DDc
  Evaluated person under guardianship's use of Supported Decision-Making. Submitted report to the Court and parties giving my opinion that person was effectively using Supported Decision-Making to make her own decisions. Qualified and testified as an expert at trial. Court terminated guardianship, in the first Michigan case to do so in favor of a person's use of Supported Decision-Making, citing my report as persuasive.

*In Re: Tecora Mickel*, D.C. Sup.Ct (Probate) Case No.: 2015 INT 291
  Appointed as independent expert in a guardianship case to evaluate and advise the Court about person under guardianship's ability to use Supported Decision-Making. Evaluated the person and submitted reports to the parties and court. Qualified as expert at trial and testified in support of person's request to have guardianship terminated. Court terminated guardianship in favor of Supported Decision-Making.

In *the Matter of Lauren Patricia O'Reilly*, Circuit Court, Greene County (MO), Estate No.: 1931-PRO1094
  Qualified and testified as subject matter expert on theory, practice, and benefits of Supported Decision-Making as an alternative to guardianship.

*In the Matter of the Guardianship and Conservatorship of Emery Scott Olson*, District Court, Laramie County (WY), Docket No. 45-341
  Evaluated person under guardianship's use of Supported Decision-Making. Worked with person and his supporters to create a Supported Decision-Making Plan. Submitted report to the Court and parties giving my opinion that person was effectively using Supported Decision-Making to make his own decisions. Court terminated guardianship, in the first Wyoming case to do so in favor of a person's use of Supported Decision-Making, citing my report as persuasive.

*State of Tennessee, Department of Human Services v. Story and Avery*, Chancery Court of Dickson County (TN), Docket No.: 2022-CV-5

> Evaluated person with intellectual disabilities to determine if she has capacity to consent to sex with her husband. Submitted report finding that person is able to, and does, effectively use Supported Decision-Making to consider and consent to sex. After I submitted my report, agency withdrew its petition to terminate person's marriage and dismissed its sexual abuse complaint against her husband.

*In Re: Tanya Anisha Powell*, D.C. Sup.Ct (Probate) Case No.: 2015 INT 529

> Appointed as independent expert in a guardianship case to evaluate and advise the Court about person under guardianship's ability to use Supported Decision-Making. Submitted reports to the Court, then worked with the parties to reach a resolution terminating the guardianship in favor of Supported Decision-Making.

*In the Matter of the Guardianship and Conservatorship of Edward J. Lorenz*, District Court, Laramie County (WY), Docket No. 48-543

> Evaluated person under guardianship's use of Supported Decision-Making. Worked with person and his supporters to create a Supported Decision-Making Plan. Submitted report to the Court and parties giving my opinion that person was effectively using Supported Decision-Making to make his own decisions. After I filed my report, the guardians withdrew opposition to termination of the guardianship. Court terminated guardianship, citing to the existence of the Supported Decision-Making Plan

*In re: the Guardianship of Jamie Lavonne Beck*, Superior Court, Wayne County (IN), Case No.: 89DO2-1805-GU-000044

> Testified via affidavit on theory, practice, and benefits of Supported Decision-Making as an alternative to guardianship.

*In re: the Guardianship of Tyler Borjas*, Probate Court, Miami-Dade County (FL), Case No.:2017002056GD02

> Testified via affidavit on theory, practice, and benefits of Supported Decision-Making as an alternative to guardianship.

## Honors

National Alliance on Mental Illness: *Marjorie Morris Memorial Human Rights Award*

The Arc Tennessee: *Justice Award*

Vanderbilt University Kennedy Center: *Martin Luther King Jr. Commemorative Lecturer*

*Impact,* Special Edition on Supported Decision-Making*: Guest Editor*

Department for Rights of Virginians with Disabilities: *Outstanding Service Award*

Hofstra University School of Law: *Citation of Excellence in Labor and Employment Law*

Hofstra University School of Law: *Pro Bono Student Lawyers Project Award*

# Publications

Martinis, J, Shogren, K., & Blanck, P. (2024). Turning off the school-to-guardianship pipeline: Incorporating supported decision-making into special education. *Inclusive Practices 3*(3), 69-77.

Whaley, B., Martinis, J. . . & Blanck, P. (2024). The Americans with Disabilities Act and equal access to public spaces. *Laws 13*(5), 1-12.

Martinis, J., Harris, J., Fox, D., & Blanck, P. (2023). State guardianship laws and supported decision-making in the United States after *Ross and Ross v. Hatch*: Analysis and implications for future research, education, and advocacy. *Journal of Disability Policy Studies 34*(1), 8-16.

Martinis, J. (as Jonathan Gerald Martinis, LLC) (2023). Supported decision-making brochures. *Connecticut State Independent Living Council*

- Supported Decision-Making: Guardianship and Conservatorship are not your ONLY Options
- Supported Decision-Making in Special Education Programs
- Supported Decision-Making and Transition Planning: What are you Going to do after High School?
- Supported Decision-Making in Vocational Rehabilitation
- Supported Decision-Making through the Years
- Supported Decision-Making and Managing your Money
- Supported Decision-Making and Health Care

Martinis, J. (2023). Rights at risk: Michael Oher, Britney Spears, and You. *University of North Carolina at Chapel Hill School of Social Work.* https://rethinkingguardianshipnc.org/2023/09/13/rights-at-risk-michael-oher-britney-spears-and-you/

Martinis, J. (2022). Shutting down the school to guardianship pipeline: What we know and what we need. *University of North Carolina at Chapel Hill School of Social Work.* https://rethinkingguardianshipnc.org/2022/11/13/shutting-off-the-school-to-guardianship-pipeline-what-we-know-and-what-we-need/

Martinis, J. (as Jonathan Gerald Martinis, LLC) (2022): Position statements. *The Missouri Developmental Disabilities Council.*

- Bridging the Digital Divide
- Competitive Employment
- Creating a Culture of Coordinated Support
- Diversity
- Inclusive Education
- Outreach

8

- ▪ Restraint and Seclusion in Schools
- ▪ Safety and Well-Being
- ▪ Self-Determination and Guardianship
- ▪ Special Education Transition Planning
- ▪ Transportation
- ▪ Voting

Martinis, J. (as Jonathan Gerald Martinis, LLC) (2022): Supported decision-making guides. *The Munroe-Meyer Institute*. https://www.unmc.edu/mmi/family-resources/community-services/sdm.html

- ▪ Supported Decision-Making and Guardianship
- ▪ Learning to Live Independently: Supported Decision-Making in Special Education Programs
- ▪ Moving Forward Together: Supported Decision-Making in Special Education Transition Services
- ▪ My Health, My Life, My Choices: Supported Decision-Making in Health Care
- ▪ Making Every Dollar Count: Supported Decision-Making and Managing Your Money

Martinis, J. (2021, October 13). Britney Spears, Peter Max and all of us: Abusive guardianships are a big national problem. *New York Daily News*. https://www.nydailynews.com/opinion/ny-oped-britney-spears-peter-max-20211013-zxyfehkuczaerjlbhwkcfr3laq-story.html

Martinis, J. (as Jonathan Gerald Martinis, LLC) (2021-2022). Supported decision-making series. *The Virginia Parent Education and Advocacy Center*. https://peatc.org/services/transition-to-adulthood/

- ▪ Is Guardianship My ONLY Option?
- ▪ Learning to be Independent: Supported Decision-Making in Special Education Programs
- ▪ What Comes Next?: Supported Decision-Making in Special Education Transition Planning
- ▪ Getting to Work: Supported Decision-Making in Vocational Rehabilitation
- ▪ Taking Care, Taking the Lead: Supported Decision-Making and Your Health
- ▪ My Money, My Choices: Supported Decision-Making and Managing Your Money
- ▪ Bringing it all Together: Creating a Culture of Coordinated Support

Shogren, K. A., Dean, E. E., Linnenkamp, B., Raley, S. K., Martinis, J., & Blanck, P. (2021). Supported Decision-Making. In *Decision Making by Individuals with Intellectual and Developmental Disabilities* (pp. 21-45). Springer, Cham.

Schnieders, C., Saks, E., Martinis, J., & Blanck, P. (2021). Psychiatric advanced directives and supported decision-making: Preliminary developments and pilot studies in California, in MENTAL HEALTH, HUMAN RIGHTS, AND LEGAL CAPACITY (Eds. M. Stein, F. Mahomed, C. Sunkel, V. Patel). Cambridge University Press, New York.

Martinis, J. (2021). Psychiatric advance directives policy briefs. *The Saks Institute for Mental Health Law, Policy, and Ethics*.

- Psychiatric Advanced Directives: Overview and Uses
- Psychiatric Advance Directives: Perspectives of Peers, Family Members, and Clinicians
- Incorporating Psychiatric Advance Directives into California's Mental Health System: Opportunities and Challenges
- The Multi-County Innovation Project on Psychiatric Advance Directives and Other Forms of Supported Decision-Making: Enhancing Health and Life Outcomes by Empowering Consumer Choice

Martinis, J. & Beadnell, J. (2021). "I learned that I have a voice in my future:" Summary, findings, and recommendations of the Virginia supported decision-making pilot project. http://supporteddecisionmaking.org/node/488

Beadnell, L. & Martinis, J. (2020). Re-thinking guardianship and substitute decision-making: Supported decision-making and the reform of Virginia law, policy, and practice to protect rights and ensure choice. *Developments in Mental Health Law 39*(1), 1-13.

Raley, S., Shogren, K., Martinis, J., & Wehmeyer, M. (2020).  Age of majority and alternatives to guardianship: A necessary amendment to the individuals with disabilities education act of 2004. *Journal on Disability Policy Studies*.

Martinis, J. (2019).  Making it happen: Strategies for supported decision-making. *Impact 32*(1), 45.

Martinis, J., Cassidy, K., Gustin, J., Nadeau, J., & Robinson, D. (2019). Creating a culture of coordinated support in Vermont: The successful transitions program. *Impact 32*(1), 19-21.

Hallmark, L. & Martinis, J. (2019). Psychiatric advanced directives in Texas: The TRLA model. *Impact 32*(1), 43-44.

Martinis, J. & Blanck, P. (2019). *Supported Decision-Making: From Justice for Jenny to Justice for All. A Theory to Practice Guide*. Virginia: Something Else Solutions Press

Martinis, J. (2019*)*. My life, my decisions: An introduction to supported decision-making: *Maine Association of Community Providers*.

Martinis, J. & Harris, J. (2019). ABLE accounts and supported decision-making: Building a pathway to independence, inclusion and a "decent quality of life." *National Resource Center for Supported Decision-Making*. http://supporteddecisionmaking.org/node/475

Blanck, P., & Martinis, J. (2018). "The right to make choices": Supported decision-making activities in the United States, in LA VOLUNTAD DE LA PERSONA PROTEGIDA: OPORTUNIDADES, RIESGOS, Y SALVAGUARDAS (Eds. M. Nuñez, M., & G. Díaz Pardo). Universidad Rey Juan Carolos, Pais, Spain.

Martinis, J. & Whitlatch, M. (2018). Missouri symposium on supported decision-making consensus document. *University of Missouri – Kansas City Institute for Human Development*. https://ihd.umkc.edu/wp-content/uploads/2019/06/SymposiumConsensusDocument_FINAL.pdf.

Shogren, K., Wehmeyer, M., Martinis, J., & Blanck, P. (2018). *Supported Decision-Making: Theory, Research, and Practice to Enhance Self-Determination and Quality of Life*, New York: Cambridge University Press

Martinis, J. & Gustin, J. (as Something Else Solutions, LLC) (2018-2019): Supported decision-making series. *Missouri Developmental Disabilities Council*. https://moddcouncil.org/

- Do I HAVE to get Guardianship?
- "Education, Employment, and Independent Living:" Supported Decision-Making in Special Education Programs
- Planning for the Rest of Their Lives: Supported Decision-Making in Special Education Transition Services
- "Maximizing Employment and Independence": Supported Decision-Making in Vocational Rehabilitation Programs
- My Health, My Decisions: Supported Decision-Making in Health Care
- Living Your Best Life: Supported Decision-Making in Person Centered Planning
- A Shot at the American Dream: Supported Decision-Making and Managing Money
- Getting Older, Getting Better: Supported Decision-Making through the Years
- Shelter from the Storm: Supported Decision-Making and Emergency Planning
- Staying Healthy, Staying Connected: Supported Decision-Making in a Pandemic

Jeste, D, Eglit, G., Palmer, B, Martinis, J., & Blanck, P. (2018). Supported decision-making in serious mental illness. *Psychiatry, 81*(1), 28-40.

Martinis, J. (2017). An introduction to supported decision-making. *The Missouri Developmental Disabilities Council*. http://www.moddcouncil.org/?page_id=whatsnewstory&id=68

Martinis, J. & Gustin, J. (2017). Supported decision-making: Everyone can make decisions. *The Frontline Initiative, 14*(2), 12.

Martinis, J. & Gustin, J. (2017). Dream-inspired planning. *The Frontline Initiative, 14*(2), 13.

Martinis, J. & Gustin, J. (2017). A culture of coordinated support. *The Frontline Initiative, 14*(2), 14.

Martinis, J., Campanella, T., & Blanck, P. (2017). *Supported Decision-Making as an Alternative to* Guardianship, in HANDBOOK OF POSITIVE PSYCHOLOGY (Wehmeyer, M., Ed) (Springer Publications).

Martinis, J. & Gustin, J. (as Something Else Solutions, LLC). (2017-2018): Position statements. *The Missouri Developmental Disabilities Council*. http://www.moddcouncil.org

- Competitive Employment
- Creating a Culture of Coordinated Support
- Diversity
- Inclusive Education
- Outreach
- Personal Safety and Wellbeing
- Restraint and Seclusion in Schools
- Self-Determination and Guardianship
- Special Education Transition Planning
- Transportation

Martinis, J., Collins-Dean, C., & Smith-Butler, L. (2017). Supported decision-making: Everyone has the right to make choices. Updated. *Kentucky Protection and Advocacy Rights Reporter*. Summer, 2017. http://nebula.wsimg.com/f0c8491e86a1505d8922a41329e3c430?AccessKeyId=65CDDAA309ED09126F01&disposition=0&alloworigin=1

Martinis, J. & Gustin, J. (2017). Supported decision-making as an alternative to overbroad and undue guardianship. *The Advocate, 60*(6), 41-46.

Martinis, J. & Gustin, J. (2017). Supported decision-making: An equal right to make choices. *Disability Rights Idaho*. http://disabilityrightsidaho.org/equal-right-make-choices-supported-decision-making-jonathan-martinis-jesselyn-gustin/

Arstein-Kerslake, A., Watson, J., Browning, M., Martinis, J., & Blanck, P. (2017). Future directions in supported decision-making. *Disability Studies Quarterly, 37*(1).

Blanck, P., Campanella, T. & Martinis, J. (2017). *Legal and Ethical Considerations in Ensuring Rights and Entitlements*, in A COMPREHENSIVE GUIDE TO INTELLECTUAL AND DEVELOPMENTAL DISABILITIES (Wehmeyer, M., Ed.) (2d ed., Paul H. Brookes Publishing Company).

Francisco, S. & Martinis, J. (2017). Supported decision-making teams: Setting the wheels in motion. *National Resource Center for Supported Decision-Making*. http://supporteddecisionmaking.org/sites/default/files/Supported-Decision-Making-Teams-Setting-the-Wheels-in-Motion.pdf

Gustin, J. & Martinis, J. (2016). Change the culture, change the world: Increasing independence by creating a culture of coordinated support.  *Apostrophe*. http://apostrophemagazine.com/vermont-change-culture-disabilities

Dinerstein, R., Grewal, E.G., & Martinis, J. (2016). Emerging international trends and practices in guardianship law for people with disabilities. *ILSA Journal of International and Comparative Law, 22*(2). 435.

Shogren, K., Abery, A, Antosh, A, Broussard, R.,  . . . & Martinis, J. (2015). Recommendations of the self-determination and self-advocacy strand from the national goals 2015 conference. *Inclusion 3*(4), 205-2010.

Martinis, J. (2015). Supported decision-making: Everyone has the right to make choices. *Kentucky Protection and Advocacy Rights Reporter*, Fall 2015, 1. http://www.kypa.net/uploads/Rights_Reporter_Fall_2015.pdf

Martinis, J. (2015). Supported decision-making: Protecting rights, ensuring choices. *Bifocal 36*(5), 107-110.

Jameson, M., Riesen, T., Polychronis, S., Trader, B., Mizner, S., Hoyle, D, & Martinis, J. (2015). Guardianship and the potential of supported decision-making for individuals with disabilities. *Research and Practice for People with Severe Disabilities*, 40(1), 1-16.

Hatch, M, Crane, S, & Martinis, J. (2015). Unjustified isolation is discrimination: The *Olmstead* case against overbroad and undue organizational and public guardianship. *Inclusion, 3*(2), 65-74.

Martinis, J. (2015). "The right to make choices": How vocational rehabilitation can help young adults with disabilities increase self-determination and avoid guardianship. *Journal of Vocational Rehabilitation, 42*, 221-227.

Blanck, P. & Martinis, J. (2015). "The right to make choices": The national resource center for supported decision-making. *Inclusion, 3*(1), 24-33.

Martinis, J. (2014). From justice for Jenny to justice for all. *Apostrophe*. http://apostrophemagazine.com/justice-for-jenny/

Martinis, J. (2014). Supported decision-making: An agenda for action. *Quality Trust for Individuals with Disabilities*. http://bbi.syr.edu/news_events/news/2014/02/Supported%20Decision%20Making-2014.pdf

Martinis, J., (2013). One person, many choices: Using special education transition services to increase self-direction and decision-making and decrease overbroad or undue guardianship. *Quality Trust for Individuals with Disabilities*. http://jennyhatchproject.org/docs/publications/jhjp_publications_draft_article_guardianship.pdf

Martinis. J. (1998-2012). *The Virginia Office for Protection and Advocacy*:

- Investigation Report on the Neglect of SH
- Investigation Report on the Suicide of TW
- Report on the Use of Seclusion and Restraint at Western State Hospital
- Follow-Up Report on the Use of Seclusion and Restraint at Western State Hospital
- The Rights of Persons with Disabilities: Traveling with a Service Animal

- The Rights of Persons with Disabilities: Your Right to a Qualified Sign Language Interpreter During Medical Service
- The Rights of Persons with Disabilities: Accessibility
- The Rights of Persons with Disabilities: One Person, One Vote
- Voters with Disabilities - What Election Officials Need to Know

Martinis, J. (1995). Beyond back pay: "Damaging" remedies in discrimination suits. *Employment in the Mainstream,* July, 1995.

Martinis, J. (1994). The hand that opens the window: Dignity and the Americans with Disabilities Act. *In the Mainstream*, September, 1994.

Martinis, J. (1992). State v. Reilly. *Hofstra Envtl. L. Dig. 9* (1992): 117.

## **Selected Presentations**

| | |
|---|---|
| North Carolina Guardianship Association | Annual Conference: April 2025 |
| Virginia Board for People with Disabilities | Invited Address: April 2025 |
| Stevens Institute of Technology | Classroom Lecture: April 2025 |
| Wyoming Institute for Disabilities | ECHO training: March 2025 |
| Connecticut State Independent Living Council | Webinar: Feb. 2025 |
| Connecticut Supported Decision-Making Coalition | SDM Town Hall: Jan. 2025 |
| Tennessee Center for Decision-Making Support | Webinar Series: Sept.-Dec. 2024 |
| Wyoming Independent Living | Webinar: Oct. 2024 |
| Ohio Department of Education, State Support Team 3<br>    Plenary Address | Annual Conference: Oct. 2024 |
| The Arc of Florida<br>    Keynote Address and Two Breakout Sessions | Annual Conference: Sept. 2024 |
| Nebraska Developmental Disabilities Council | SDM Conference: Aug. 2024 |
| Missouri Partners in Policymaking | Invited Address: July 2024 |
| New Mexico Developmental Disabilities Council<br>    Keynote Address and Three Breakout Sessions | Annual Conference: June 2024 |
| Virginia Board for People with Disabilities<br>    Closing Address | Annual Conference: June 2024 |
| The Arc of Colorado<br>    Keynote Address and Four Breakout Sessions | SDM Conference: June 2024 |
| Wyoming Adult Protective Services | Webinar: June 2024 |
| Quality Trust for Individuals with Disabilities | Webinar Series: March-May 2024 |

| Connecticut Bar Association | Continuing Legal Education Program: April 2024 |
| Stevens Institute of Technology | Classroom Lecture: April 2024 |
| New Jersey Partners in Policymaking | Invited Address: April 2024 |
| Connecticut Office of the Probate Court | Judicial Conference: March 2024 |
| University of Delaware | SDM Summit: March 2024 |
| New York Council on Developmental Disabilities | Invited Address: March 2024 |
| Nebraska Department of Education | Transition Conference: Feb. 2024 |
| New Jersey Partners in Policymaking | Invited Address: Feb. 2024 |
| National Disability Institute | Webinar Series: Jan. 2024 |
| People First of Missouri | Webinar: Jan. 2024 |
| Golisano Institute for Developmental Disability Nursing | Webinar: Dec. 2023 |
| Educational Service Center of Northeast Ohio | Webinar Series: Nov 2023-Jan 2024 |
| Connecticut Supported Decision-Making Coalition<br>    Keynote Address | SDM Summit: Nov. 2023 |
| Wyoming Independent Living | Webinar: Oct. 2023 |
| AgingCT | Annual Conference: Oct. 2023 |
| Educational Service Center of Northeast Ohio | Annual Conference: Oct. 2023 |
| American University Washington College of Law | Classroom Lecture: Sept. 2023 |
| National Association of Councils on Developmental Disabilities | Webinar: Sept. 2023 |
| Connecticut State Independent Living Council | Supported Decision-Making Webinars Aug.-Nov. 2023 |
| North Carolina Developmental Disabilities Council | Annual Meeting: Aug. 2023 |
| Nebraska State Unit on Aging | Annual Conference: Aug. 2023 |
| Missouri Partners in Policymaking | Invited Address: July 2023 |
| Virginia Coalition for the Prevention of Elder Abuse<br>    Two Breakout Sessions | Annual Conference: June 2023 |
| Mississippi Developmental Disabilities Council<br>    Keynote Address and Breakout Session | Annual Conference: June 2023 |
| Educational Service Center of Northeast Ohio<br>    Two Breakout Sessions | Annual Conference: June 2023 |

| | |
|---|---|
| Cleveland Municipal School District<br>    <u>Plenary Address and Two Breakout Sessions</u> | Annual Conference: June 2023 |
| Connecticut State Independent Living Council | Webinar: June 2023 |
| Stevens University | Annual Biomedical Conf: May 2023 |
| North Carolina Guardianship Association | Annual Conference: May 2023 |
| New York State Developmental Disabilities Planning Council | Invited Address: May 2023 |
| University of Delaware, Center for Disabilities Studies | Webinar Series: April-May 2023 |
| New York University School of Law | Classroom Lecture: April 2023 |
| State University of New York, Binghamton | Classroom Lecture: April 2023 |
| The Arc of Florida | Webinar: April 2023 |
| Ohio State Support Team 11 | Special Education Conf: April 2023 |
| Nebraska Vocational Rehabilitation | Counselor Training: March 2023 |
| North Carolina Bar Association | Annual Elder and Special Needs Law Symposium: Feb. 2023 |
| Nebraska Department of Education | Annual Transition Conf.: Feb 2023 |
| New Jersey Partners in Policymaking | Invited Address: Feb. 2023 |
| Ohio State Support Team 11 | SDM Q&A Session: Dec. 2022 |
| Next Steps New Hampshire | Annual Conference: Nov. 2022 |
| Easter Seals Foundation of the Midwest | Annual Conference: Nov. 2022 |
| Ohio State Support Team 11 | Parent/Teacher Training: Nov. 2022 |
| Connecticut State Bar Association | Diversity Conference: Oct. 2022 |
| Nebraska Association of Community Professionals | Annual Conference: Sept. 2022 |
| Kansas University Center on Excellence in Developmental Disabilities | Community Team Meeting: Sept. 2022 |
| 504 at 50 Podcast<br>    <u>Conducted 4 Interviews</u> | Interviews: Sept-Nov. 2022 |
| Colorado State Bar Association<br>    <u>Plenary Address and Two Breakout Sessions</u> | Elder Law Retreat: Aug. 2022 |
| California Continuing Education for the Bar | CLE Program: Aug. 2022 |
| North Carolina Division of Medical Assistance | Staff Training: July 2022 |
| The Arc of the Bay, Florida | ADA Celebration: July 2022 |
| Missouri Partners in Policymaking | Invited Address: July 2022 |

| | |
|---|---|
| American University Washington College of Law | Classroom Lecture: June 2022 |
| Wyoming Governor's Council on Developmental Disabilities | Annual Conference: June 2022 |
| Nebraska Developmental Disabilities Network | Tri-Board Meeting: June 2022 |
| Southwest Virginia Legal Aid<br>     Keynote Address and Two Breakout Sessions | Elder Abuse Conference: June 2022 |
| Nebraska Division of Developmental Disabilities | Webinar: June 2022 |
| Nebraska Youth Leadership Conference | Summer Conference: June 2022 |
| Boggs Center on Developmental Disabilities | Podcast: June 2022 |
| Judicial Conference of Virginia | Annual Conference: May 2022 |
| North Carolina Judicial College | Annual Conference: May 2022 |
| University of Connecticut, Center on Excellence in Developmental Disabilities | Webinar: April 2022 |
| Autism Society of Southern Illinois | Annual Conference: April 2022 |
| Mindfreedom International | Webinar: April 2022 |
| West Virginia University<br>Traumatic Brain Injury Services<br>     Keynote Address and Breakout Session | Annual Conference: Mar. 2022 |
| Nebraska State Transition Conference | Annual Conference: Feb. 2022 |
| California Special Needs Planning Symposium<br>     Keynote Address | Annual Conference: Feb. 2022 |
| The Arc of Illinois | Annual Conference: Jan. 2022 |
| New Hampshire Family Voices | Annual Conference: Jan. 2022 |
| Kansas State Schools for the Deaf and Blind | Webinar: Jan. 2022 |
| Virginia Parent Educational Advocacy Training Center<br>     Six Webinars | Webinar Series: Jan.-June 2022 |
| Nebraska Developmental Disabilities Council | Webinar: Jan. 2022 |
| New Jersey Partners in Policymaking | Invited Address: Dec. 2021 |
| District of Columbia Probate Court | Judicial Training: Dec. 2021 |
| Missouri State Bar Association | Estate and Trust Conference: Dec. 2021 |
| Parent2Parent USA | Webinar: Dec. 2021 |
| North Carolina Conference on Exceptional Children | Annual Conference: Nov. 2021 |
| Illinois Statewide Transition Conference | Annual Conference: Nov. 2021 |

|  |  |
|---|---|
| <u>Keynote Address and Breakout Session</u> | |
| Stetson University College of Law<br>    <u>Two Breakout Sessions</u> | Special Needs Trust Conf: Oct. 2021 |
| Ireland National Disability Authority | Webinar: Oct. 2021 |
| Disability Rights Rhode Island<br>    <u>Five Webinars</u> | Webinar Series: Oct 2021-Jan. 2022 |
| Ohio State Support Team 11<br>    <u>Six Webinars for Teachers and Parents</u> | Webinar Series: Oct.-Dec. 2021 |
| #FreeBritney America | Featured Speaker, U.S. Capitol Rally: Oct. 2021 |
| North Carolina Guardianship Association | Annual Conference: Sept. 2021 |
| Virginia Parent Educational Advocacy Training Center<br>    <u>Keynote Address and Two Breakout Sessions</u> | Annual Conference: Sept. 2021 |
| National Association of State Head Injury Administrators | Webinar: Sept. 2021 |
| Virginia Parent Educational Advocacy Training Center<br>    <u>Keynote Address</u> | Military Conference: Sept. 2021 |
| Michigan Developmental Disabilities Council | Webinar: Sept. 2021 |
| Ohio Educational State Support Team One | Podcast: Sept. 2021 |
| American Bar Association | Webinar: Aug. 2021 |
| Michigan Developmental Disabilities Council | Webinar: Aug. 2021 |
| Parent to Parent, USA | Webinar: Aug. 2021 |
| Care Design New York | Staff Training: July 2021 |
| Missouri Partners in Policymaking | Invited Address: June 2021 |
| Wyoming Governor's Council on People With Developmental Disabilities | Annual Conference: June 2021 |
| Nebraska Developmental Disabilities Network | Invited Address: June 2021 |
| American University Washington College of Law | Classroom Lecture: June 2021 |
| Arlington, Va, Disability and Justice System Coalition | Regional Conference: June 2021 |
| North Central Ohio Education Service Center | Annual Conference: May 2021 |
| Saks Institute for Mental Health Law, Policy And Ethics | Annual Symposium: May 2021 |
| Americans Against Abusive Probate Guardianship | Annual Conference: April 2021 |

| | |
|---|---|
| Parent 2 Parent USA: | Webinar: April 2021 |
| Your Community of Care | Podcast: March 2021 |
| NY Office of People with Developmental Disabilities | Webinar: March 2021 |
| Tiffin City, Ohio, Board of Education     Five Webinars for Students, Parents,     and Teachers | Webinars: Feb-April. 2021 |
| Parent 2 Parent USA | Webinar: Feb. 2021 |
| CIDA, Korean Family Support Group | Webinar: Feb. 2021 |
| Quality Trust for Individuals with Disabilities     Four Webinars | "Hot Topic" Webinars: Jan. 2021 |
| North Carolina Rethinking Guardianship Workgroup | Facilitate Work Group: Jan. 2021 |
| New Jersey Partners in Policymaking | Invited Address: Dec. 2020 |
| Kansas Self Determined Transition Task Force | Invited Address: Dec. 2020 |
| Muscular Dystrophy Association | ENGAGE Conference: Nov. 2020 |
| Access CNY | Invited Address: Nov. 2020 |
| North Carolina *Olmstead* Plan Stakeholder Advisory Committee | Invited Address: Oct. 2020 |
| CTF Illinois | Webinar: Oct. 2020 |
| Arc of Northern Virginia | Invited Address: Oct. 2020 |
| Pacific Northwest Law and Education Institute     Two Breakout Sessions | Annual Conference: Oct. 2020 |
| South Carolina State Bar Association | Bench and Bar Conference: Sept. 2020 |
| Colorado State Bar Association | Elder Law Conference: Aug. 2020 |
| Illinois Partners in Policymaking | Invited Address Aug. 2020 |
| North Carolina Rethinking Guardianship Task Force | Invited Address: Aug. 2020 |
| Arc of Virginia     Two Breakout Sessions | Annual Conference: Aug. 2020 |
| Quality Trust for Individuals with Disabilities | Education Town Hall: July 2020 |
| Arizona Institute for Human Development | Annual Conference: July 2020 |
| University of Illinois | Transition Conference: July 2020 |
| APSE | Annual Conference: June 2020 |
| Quality Trust for Individuals with Disabilities | Virtual Town Hall: May 2020 |

| | |
|---|---|
| Lincoln Street, Inc. | Staff Training: May 2020 |
| Florida International University | Webinar: April 2020 |
| New York ACCESS | Webinar: March 2020 |
| AAIDD | Webinar: March 2020 |
| The Arc of Northern Virginia | Special Conference: March 2020 |
| Kansas Self-Determination Consortium | Facilitate Consortium: March 2020 |
| Missouri Supported Decision-Making Task Force | Facilitate Task Force: March 2020 |
| CTF Illinois | Invited Address: Feb. 2020 |
| DeLovely Podcast | Interview: Feb. 2020 |
| Arc of Northern Virginia | Special Conference: Feb. 2020 |
| West Virginia University Center for Excellence in Developmental Disabilities | Webinar: Feb. 2020 |
| Pickaway County, Ohio, Public Schools | Invited Address: Jan. 2020 |
| Prince Georges County, Maryland, Bar Association | CLE Presentation: Jan. 2020 |
| American University Washington College of Law | Classroom Lecture: Jan. 2020 |
| Pickaway County, Ohio, Public Schools | Invited Address: Jan. 2020 |
| Kansas Supported Decision-Making Task Force | Facilitate Task Force: Dec. 2019 |
| New Jersey Partners in Policymaking | Invited Address: Dec. 2019 |
| North Carolina Center for Integrative Health | Annual Conference: Dec. 2019 |
| Not Weird, Just Autistic | Podcast Interview: Nov. 2019 |
| Virginia Commonwealth University | Classroom Lecture: Nov. 2019 |
| ADA Live! | Podcast Interview: Nov. 2019 |
| National Association of Direct Support Providers | Webinar: Nov. 2019 |
| Maine Association of Community Providers | Annual Conference: Nov. 2019 |
| Missouri Supported Decision-Making Consortium | Facilitate Consortium: Oct. 2019 |
| Progressive Community Services | Invited Address: Oct. 2019 |
| Maine Association of Community Providers | Webinar: Sept. 2019 |
| Illinois Developmental Disabilities Council <br> Keynote Address and Breakout Session | Council Conference: Sept. 2019 |
| Mansfield, Ohio, High School | Invited Address: Aug. 2019 |
| Ohio State Support Team 7 <br> Keynote Address and Breakout Session | Transition Conference: Aug. 2019 |

| | |
|---|---|
| New Hope, Ohio, Board for Developmental Disabilities | Invited Address: Aug. 2019 |
| New York Association of Direct Service Professionals | Webinar: Aug, 2019 |
| ADvancing States (formerly NASUAD) | HCBS Conference: Aug. 2019 |
| Circleville High School, Ohio | Invited Address: Aug. 2019 |
| Nevada Department of Education | Annual Conference: July 2019 |
| Perry County, Ohio, Board for People with Developmental Disabilities | Invited Address: July 2019 |
| Missouri Partners in Policymaking | Invited Address: July 2019 |
| Washington, DC, Department of Aging and Community Living | Annual Conference: June 2019 |
| Maine Association of Community Service Providers | Special Conference: June 2019 |
| National Resource Center for Supported Decision-Making<br>    Two Breakout Sessions | Annual Conference: June 2019 |
| American University Washington College of Law | Classroom Lecture: May 2019 |
| Ohio Association of County Board of Developmental Disabilities<br>    Two Breakout Sessions | Annual Conference: May 2019 |
| The Arc of Illinois<br>    Keynote Address and Breakout Session | Annual Conference: May 2019 |
| Adult Protective Services Technical Assistance Resource Center | Webinar: May 2019 |
| United Healthcare<br>    Three Statewide Trainings | TN Staff Trainings: April 2019 |
| Missouri Supported Decision-Making Task Force | Facilitate Task Force: April 2019 |
| APSI, Ohio Public Guardian<br>    Keynote Address and Facilitate Panel | Annual Conference: April 2019 |
| Wood County, Ohio, Board of Developmental Disabilities | Staff Training: April 2019 |
| Henry County, Ohio, Board of Developmental Disabilities | Staff Training: April 2019 |
| Auglaize County, Ohio, Board of Developmental Disabilities | Staff Training: April 2019 |
| AHRC of Nassau County, New York<br>    Five Breakout Sessions | Staff, Public Training: April 2019 |

| | |
|---|---|
| Nevada Department of Education | Workgroup Meeting: March 2019 |
| Rutland, Vermont, Core Transition Team | Workgroup Meeting: Feb. 2019 |
| The State Bar of Texas | Webinar: Feb. 2019 |
| Nevada Department of Education | Workgroup Meeting: Jan. 2019 |
| Idaho Board of Education | Transition Conference: Nov. 2018 |
| Idaho Developmental Disabilities Council | Special Conference: Nov. 2018 |
| Huron County, Ohio, Probate Court | Guardianship Training: Nov. 2018 |
| South Carolina Bar Association <br>     Four Breakout Sessions | Special Conference: Nov. 2018 |
| South Carolina Protection and Advocacy | Special Conference: Nov. 2018 |
| Pacific Northwest Law and Education Institute | Annual Conference: Oct. 2018 |
| Abilities First, Missouri | Annual Conference: Oct. 2018 |
| Ohio SYNERGY | Annual Conference: Oct. 2018 |
| Arc of Missouri | Special Conference: Sept. 2018 |
| University of Missouri, Kansas City | Special Conference: Sept. 2018 |
| New York Adult Protective Services Association | Annual Conference: Sept. 2018 |
| Ohio Superintendents of County Boards of <br> Developmental Disabilities | Annual Conference: Aug. 2018 |
| The Arc of Florida | Invited Address: Aug. 2018 |
| The Arc of Palm Beach County, Florida | Invited Address: Aug 2018 |
| Tennessee Alliance for Legal Services | Annual Conference: Aug. 2018 |
| Missouri Partners in Policymaking | Invited Address: July 2018 |
| Wyoming Developmental Disabilities Council | Annual Conference: June 2018 |
| The Arc of Florida | Regional Conferences: June 2018 |
| Idaho Supreme Court | Regional Conferences: June 2018 |
| American University Washington College of Law | Classroom Lecture: May 2018 |
| Rutgers University Boggs Center | Invited Address: May 2018 |
| The Arc of Tennessee | Annual Conference: May 2018 |
| Indiana Governor's Council for People <br> with Disabilities | Leadership Conf.: April 2018 |
| Upper Valley Services, Vermont, Services | Staff Training: April 2018 |
| Rutland, Vermont, Core Transition Team | Staff Training: April 2018 |
| Special Olympics | Invited Address: April 2018 |
| Shepard Broad College of Law | Invited Address: March 2018 |

| | |
|---|---|
| Minnesota Social Service Association | Annual Conference: March 2018 |
| Williams County, Ohio, Board of Developmental Disabilities | Regional Conf. March 2018 |
| Tennessee Partners in Education <u>Keynote Address and Breakout Session</u> | Annual Conference: Feb. 2018 |
| Tennessee Protection and Advocacy | Staff Training: Feb. 2018 |
| American University Washington College of Law | Classroom Lecture: Jan. 2018 |
| Vanderbilt University Kennedy Center | Dr. Martin Luther King, Jr., Commemorative Address: Jan. 2018 |
| Tennessee Inter-Agency Task Force | Facilitate Task Force: Jan. 2018 |
| Huron County, Ohio, Board of Developmental Disabilities | Invited Address: Dec. 2017 |
| The Arc of Florida | Statewide Trainings: Dec. 2017 |
| Florida Agency for Persons with Disabilities | Invited Address: Dec. 2017 |
| Pickaway County, Ohio, Board of Developmental Disabilities | Invited Address: Dec. 2017 |
| Williams County, Ohio, Board of Developmental Disabilities | Invited Address: Dec. 2017 |
| Indiana Governor's Council for People with Disabilities | Annual Conference. Dec. 2017 |
| Georgia State Bar Association | Legal Conference: Nov. 2017 |
| Nevada State Bar Association | Legal Conference: Nov. 2017 |
| Huron County, Ohio, Board for People with Developmental Disabilities | Invited Address: Nov. 2017 |
| Richland County, Ohio, Board for People with Developmental Disabilities | Invited Address: Nov. 2017 |
| Crawford County, Ohio, Board for People with Developmental Disabilities | Invited Address: Nov. 2017 |
| The Arc of New York | Invited Address: Nov. 2017 |
| American Bar Association | Law and Aging Conf.: Oct 2017 |
| Rutland, Vermont, Core Transition Team | Invited Address: Oct. 2017 |
| Abilities First, Missouri | Annual Conference: Oct. 2017 |
| FACT Oregon | Annual Conference: Sept. 2017 |
| Tennessee Inter-Agency Employment Roundtable | Invited Address: Sept. 2017 |

| | |
|---|---|
| Tennessee Administrative Office of the Courts and Judges | Invited Address: Sept. 2017 |
| Tennessee Board of Education Staff | Invited Address: Sept. 2017 |
| Tennessee Protection and Advocacy | Invited Address: Sept. 2017 |
| Tennessee Senate Judiciary Committee | Testimony: Sept. 2017 |
| Pacific Northwest Law and Education Institute | Annual Conference: Sept. 2017 |
| Tennessee Equal Justice Institute | Annual Conference: Aug. 2017 |
| National Adult Protective Services Association | Annual Conference: Aug. 2017 |
| Utah Developmental Disabilities Council <u>Keynote Address and Breakout Session</u> | Annual Conference: July 2017 |
| Kentucky Protection and Advocacy | Staff Training: June 2017 |
| Mississippi Developmental Disabilities Council | Annual Conference: June 2017 |
| Missouri Partners in Policymaking | Invited Address: June 2017 |
| Minnesota World Elder Abuse Awareness Day <u>Keynote Address</u> | Annual Conference: June 2017 |
| American University Washington College of Law | Classroom Lecture: June 2017 |
| The Arc of Florida | Statewide Trainings: May 2017 |
| Kentucky University Center for Excellence in Developmental Disabilities | Webinar: May 2017 |
| Vermont Supported Decision-Making Task Force <u>Plenary Address and Facilitate Task Force</u> | Task Force Meeting: May 2017 |
| U.S. Center for Medicare and Medicaid Services | Webinar: April 2017 |
| The Saks Institute for Mental Health Law, Policy, and Ethics | SDM Conference: April 2017 |
| Tennessee Partners in Policy Making <u>Keynote Address and Two Breakout Sessions</u> | Annual Conference: March 2017 |
| Tennessee Developmental Disabilities Council | Invited Address: March 2017 |
| Tennessee Inter-Agency Task Force | Facilitate Task Force: March 2017 |
| TennCare | Invited Address: March 2017 |
| Tennessee Disability Policy Alliance | Invited Address: March 2017 |
| National University of Ireland at Galway | Classroom Lecture: March 2017 |
| Butler County, Ohio, County Board of Developmental Disabilities | Invited Address: March 2017 |
| Ohio Superintendents of County Boards of Developmental Disabilities | Annual Conference: March 2017 |

      <u>Keynote Address and Three Breakout Sessions</u>

| | |
|---|---|
| Washington DC Probate Court Judges | Invited Address: March 2017 |
| South Carolina Developmental Disabilities Council | Invited Address: Feb. 2017 |
| Impact South Carolina | Invited Address: Feb. 2017 |
| South Carolina Supported Decision-Making Task Force | Invited Address: Feb. 2017 |
| South Carolina Partners in Policymaking | Invited Address: Feb. 2017 |
| National Resource Center for Supported Decision-Making | SDM in Aging Conf. Feb. 2017 |
| Minnesota WINGS Workgroup | Invited Address: Feb. 2017 |
| American University, Washington College of Law | Classroom Lecture: Feb. 2017 |
| The Arc of Mississippi | Invited Address: Jan. 2017 |
| Mississippi WINGS Workgroup | Invited Address: Jan. 2017 |
| The Arc of Florida | Invited Address: Jan. 2017 |
| Indiana Governor's Council for People with Disabilities <br>     <u>Keynote Address and Two Breakout Sessions</u> | Annual Conference: Dec. 2016 |
| Butler County, Ohio, Board for People with Developmental Disabilities | Invited Address: Dec. 2016 |
| Montana Youth in Transition <br>     <u>Keynote Address and Five Breakout Sessions</u> | Annual Conference: Nov. 2016 |
| Vermont Department on Disabilities, Aging, and Independent Living <br>     <u>Plenary Address and Facilitate Task Force</u> | Task Force Meeting: Oct. 2016 |
| American Bar Association | Law and Aging Conference: Oct. 2016 |
| Autistic Self Advocacy Network <br>     <u>Plenary Address</u> | Special Conference: Oct. 2016 |
| The Arc of Florida | Annual Conference: Oct. 2016 |
| American Bar Association | Special Conference: Sept. 2016 |
| Kansas Developmental Disabilities Council <br>     <u>Keynote Address and Two Breakout Sessions</u> | State Conference: Sept. 2016 |
| Kentucky Guardianship Association <br>     <u>Plenary Address</u> | Annual Conference: Sept. 2016 |
| Kentucky University Center for Excellence on Developmental Disabilities | Invited Address: Sept. 2016 |
| Missouri County Departments on Developmental | Invited Address: Aug. 2016 |

Disabilities

| | |
|---|---|
| National Academy of Elder Law Attorneys<br>        <u>Plenary Address</u> | Annual Conference: Aug. 2016 |
| National Resource Center for Supported<br>Decision-Making | Webinar: Aug. 2016 |
| The Arc of Florida | Webinar: July 2016 |
| National Association of Councils on<br>Developmental Disabilities<br>        <u>Plenary Address and Breakout Session</u> | Annual Conference: July 2016 |
| American Bar Association | Webinar: June 2016 |
| National Resource Center for Supported<br>Decision-Making | Webinar: June 2016 |
| Washington Developmental Disabilities Council | Annual Conference: June 2016 |
| Vermont Supported Decision-Making Task Force<br>        <u>Plenary Address and Facilitate Task Force</u> | Task Force Meeting: June 2016 |
| Vermont Care Partners<br>        <u>Keynote Address</u> | Annual Conference: June 2016 |
| Missouri Developmental Disabilities Council | Invited Address: June 2016 |
| The Arc of North Carolina | Invited Address: May 2016 |
| Minnesota Department of Human Services | Invited Address: May 2016 |
| Supreme Court of Idaho | Magistrate Conference: May 2016 |
| Florida Guardian *ad Litem* Program<br>        <u>Keynote Address and Two Breakout Sessions</u> | Annual Conference: April 2016 |
| Delaware Developmental Disabilities Council | Special Conference: April 2016 |
| TMG of Wisconsin | Statewide Conferences:  April 2016 |
| Indiana Professional Management Group | Semi-Annual Conf.: April 2016 |
| Jacobus tenBroek Symposium on Disability Law<br>        <u>Plenary Address</u> | Annual Symposium: April 2016 |
| AAIDD of Missouri | State Conferences: Mar. 2016 |
| The Arc of High Point, N.C. | Invited Address: Mar. 2016 |
| The Arc of Florida | Webinar: Mar. 2016 |
| U.S. Social Security Administration | Invited Address: Feb. 2016 |
| Colorado Developmental Disabilities Council | Invited Address: Feb. 2016 |
| National Council on Disability | Invited Address: Feb. 2016 |
| District of Columbia Public Defender Service | Staff Training: Feb. 2016 |

| | |
|---|---|
| American Civil Liberties Union | California Supported Decision-Making Symposium: Feb. 2016 |
| Indiana Professional Management Group | Webinar: Jan. 2016 |
| Minnesota WINGS Workgroup | Invited Address: Jan. 2016 |
| TASH<br>    <u>Two Breakout Sessions</u> | Annual Conference: Dec. 2015 |
| Virginia Education Law Task Force | Invited Address: Nov. 2015 |
| International Law Association | Annual Conference: Nov. 2015 |
| Wisconsin Board for People with Developmental Disabilities<br>    <u>Keynote Address and Three Breakout Sessions</u> | Annual Conference: Nov. 2015 |
| National Resource Center for Supported Decision-Making<br>    <u>Panel Presentation and Closing Address</u> | Annual Conference: Nov. 2015 |
| American Bar Association | Law and Aging Conf.: Oct. 2015 |
| University of Kentucky Human Development Institute | Invited Address: Oct. 2015 |
| Kentucky Guardianship Association<br>    <u>Plenary Address</u> | Annual Conference: Oct. 2015 |
| The Arc of Florida | Annual Conference: Oct. 2015 |
| Peninsula Center for Independent Living<br>    <u>Keynote Address</u> | Annual Conference: Oct. 2015 |
| National Consumer Law Center | Webinar: Oct. 2015 |
| District of Columbia Mental Health Law Association | Invited Address: Oct. 2015 |
| New York Association for Independent Living | Annual Conference: Sept. 2015 |
| U.S. Administration for Community Living | Ombudsman Training: Sept. 2015 |
| National Consumer Law Center | Webinar: Sept. 2015 |
| District of Columbia Aging and Disability Resource Center | Invited Address: Sept. 2015 |
| The Arc of North Carolina | Annual Conference: Sept. 2015 |
| National Association of States United for Aging and Disabilities | HCBS Conference: Sept. 2015 |
| Virginia Poverty Law Center | Invited Address: Sept. 2015 |
| AAIDD and The Arc | National Goals Conf.: Aug. 2015 |
| National Disability Institute | Webinar: July 2015 |

| | |
|---|---|
| National Association of State Directors of Developmental Disabilities Services | Webinar: July 2015 |
| National Association of Area Agencies on Aging | Annual Conference: July 2015 |
| Association of People Supporting EmploymentFirst | Annual Conference: June 2015 |
| National Resource Center for Supported Decision-Making | Webinar: June 2015 |
| Washington State WINGS Workgroup | Invited Address: June 2015 |
| Catholic University of America | Invited Address: June 2015 |
| Georgetown University | Invited Address: June 2015 |
| The Arc of North Carolina <u>Keynote Address</u> | Special Conference: June 2015 |
| AAIDD | Annual Conference: June 2015 |
| Wisconsin State WINGS Workgroup | Invited Address: May 2015 |
| Florida Guardian *Ad Litem* Program <u>Keynote Address</u> | Annual Conference: May 2015 |
| National Resource Center for Supported Decision-Making | Webinar: May 2015 |
| Rutland, Vermont, Mental Health Services | Staff Training: May 2015 |
| Texas Guardianship Association | Annual Conference: May 2015 |
| Wisconsin Developmental Disabilities Council | Invited Address: May 2015 |
| American Bar Association Commission on Law and Aging | Invited Address: April 2015 |
| District of Columbia Bar Association | Annual Conference: April 2015 |
| National Resource Center for Supported Decision-Making | Webinar: April 2015 |
| New York and Mid-Atlantic Consortium for Genetic and Newborn Screening Services | Webinar: March 2015 |
| COPAA <u>Keynote Address and Full-Day Seminar</u> | Annual Conference: March 2015 |
| TASH <u>Plenary Address and Two Breakout Sessions</u> | Annual Conference: Dec. 2014 |
| Wisconsin Developmental Disabilities Council | Invited Address: Nov. 2014 |
| Howard County, Md. Department of Citizen Services | Invited Address: Nov. 2014 |
| Catholic University of America | Invited Address: Oct. 2014 |

| | |
|---|---|
| National Association of State Directors of Developmental Disabilities Services | Annual Conference: Aug. 2014 |
| The Arc of Virginia | Annual Conference: Aug. 2014 |
| National Council on Disability | Invited Address: July 2014 |
| National Association of Social Workers | Annual Conference: July 2014 |
| Association of People Supporting EmploymentFirst (APSE) <br>     Plenary Address and Breakout Session | Annual Conference: July 2014 |
| New York and Mid-Atlantic Consortium for Geneticand Newborn Screening Services | Annual Conference: May 2014 |
| Jacobus tenBroek Symposium on Disability Law <br>     Keynote Address and Breakout Session | Annual Symposium: April 2014 |
| American Civil Liberties Union | Annual Conference: April 2014 |
| District of Columbia Public Schools | Invited Address: March 2014 |
| U.S. Administration for Community Living | Invited Address: Dec. 2013 |
| The Arc of Northern Virginia <br>     Keynote Address | Annual Conference: Nov. 2013 |
| Quality Trust for Individuals with Disabilities | Annual Symposium: Oct. 2013 |
| National Association of States United for Aging and Disabilities | Annual Conference: Sept. 2013 |
| The Arc of Virginia <br>     Plenary Address and Breakout Session | Annual Conference: Aug. 2013 |
| Georgetown University Center for Excellence in Developmental Disabilities | Special Conference: June 2013 |
| Special Needs Alliance | Annual Conference: April 2013 |
| Children's Law Center | Invited Address: March 2013 |
| Archdiocese of Washington, DC | Annual Conference: March 2013 |
| Capstone Conference on Inclusive Education | Annual Conference: Jan. 2013 |
| First Baptist Church of Hampton <br>     Keynote Address | Disability Awareness Day: July 2012 |
| Various Organizations <br>     "Special Education Boot Camp" | Statewide Trainings: 2011-2012 |
| Insight Enterprises, Inc. <br>     Plenary Address | Annual Disability Conf.: Oct. 2011 |
| Hampton Roads Coalition of Centers for Independent Living <br>     Keynote Address | Annual Conference: Oct. 2009 |

| | |
|---|---|
| Virginia Association of Licensed Child Placing Agencies | Annual Conference: May 2009 |
| National Disability Rights Network | Annual Conference: June 2008 |
| Virginia Indigent Defense Commission | Annual Conference: Jan. 2008 |
| Virginia Council for the Blind | Annual Conference: Nov. 2007 |
| National Disability Rights Network | Annual Conference: June 2006 |
| J. Sergeant Reynolds College | Disability Rights Conf.: Oct. 2005 |
| Virginia Board for People with Disabilities | Human Rights Conf.: April 2005 |
| National Alliance for the Mentally Ill | Annual Conference: Oct. 2004 |
| Tidewater Coalition on Disabilities<br>    <u>Keynote Address</u> | Annual Conference: April 2004 |
| National Association of Protection and Advocacy Systems | Annual Conference: Jan. 2004 |
| Virginia Hotel and Restaurant Association | Annual Conference: Dec. 2003 |
| Virginia Recreation and Park Society | Annual Conference: Sept. 2003 |
| Endependence Center, Inc.<br>    <u>Keynote Address</u> | Annual Conference: Dec. 2002 |
| National Federation for the Blind | Annual Conference: Oct. 2002 |
| Citizens United for the Rehabilitation of Errants | Annual Conference: Sept. 2002 |
| National Alliance for the Mentally Ill | Annual Conference: May 2002 |
| Greater Hampton Roads Council on Disabilities<br>    <u>Keynote Address</u> | Annual Conference:  March 2002 |
| Virginia State University | Invited Address: Dec. 2001 |
| American Society for Healthcare Risk Management | Regional Conf.: Sept, Nov 2001 |
| National Association of Protection and Advocacy Systems | Annual Conference: July 2000 |
| National Association of Attorneys General | Annual Conference: June 2000 |

## <u>Media</u>

<u>Appeared on</u>:  CBS News Sunday, PBS NewsHour, Bloomberg Law, ABC Australia, HuffPost Live, WABC (NY), WUDC (Washington, DC), WGBH (Boston), WXYZ (Detroit), KCTV (Kansas City, WOSU (Columbus, OH), WAVY (Norfolk, VA), WMBB (Panama City, Fl).

<u>Quoted in</u>:  New York Times, Washington Post, USA Today, Time Magazine, New Yorker, Minneapolis Star Tribune, Vogue, Rolling Stone, The Week, Buzzfeed News, ABA Journal, The Mighty, Washingtonian, Refinery29, Mad in America, The Guam Daily Post, The Japan Times, Le Parisien (France), Il Post (Italy), Hamburger Morgen Post (Germany), Helsingin Sanomat (Finland), Tuol tre' (Viet Nam).