# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center,<br><br>Plaintiff,<br><br>v.<br><br>Spencer Cox *et al.*,<br><br>Defendants. | **DECLARATION OF<br>LESLIE FRANCIS**<br><br>Case No. _____ |

To Whom it May Concern:

1. I am writing this letter to give my assessment of the provisions in SB 199 that would permit parents, grandparents, or siblings to petition on a fast track for full guardianship in cases in which the respondent has been diagnosed with a "severe intellectual disability." Please be aware that although I am a faculty member at the University of Utah, this letter is being written in my individual capacity and does not in any way represent the views of my employer.

2. I am Distinguished Alfred C. Emery Professor of Law and Distinguished Professor of Philosophy at the University of Utah. I received my J.D. at the University of Utah and my Ph.D. in philosophy at the University of Michigan. I am currently serving my second term as the chair of the board of the Utah Disability Law Center. I teach disability law, health law, bioethics, and philosophy of law at the University of Utah. I am a nationally recognized scholar in law and disability. To illustrate, in

just the past month I gave a presentation on disability and supported decision making at the Stanford University Center for Biomedical Ethics and at the Harvard Law School Project on Disability.

3. Since 2017, I have been representing people who are the subject of guardianship petitions through the Signature Program of the Office of State Courts and the Utah State Bar. To date, I have represented over 200 clients through this program. One hundred and fifteen of these clients have been 18-22 year olds whose parents are seeking guardianship because their children have now become adults. I provide this representation pro bono because it gives me the opportunity to have law students help me and obtain valuable experience about the guardianship process and what it is like to make an appearance before the court. Many law students have worked with me on guardianship cases through our pro bono program and through our clinical program.  This spring, I received the University of Utah's Distinguished Faculty Service award for this work, along with other service activities.

4. I am greatly concerned about SB199 and the impact it will have on people like my clients who are respondents in guardianship cases. Central to my concern is my experience with my clients, who exhibit a very wide range of individual characteristics, but who may be treated by a "one size fits all" approach under SB 199. Neither SB 199 nor the related statutes define "severe intellectual disability." Instead, in order to be governed by the terms of SB 199, an individual simply has to "(i) ha[ve] lifelong functional limitations to the extent that the adult is incapacitated; and (ii) ha[ve] received a diagnosis from a physician or psychologist

of a severe intellectual disability that has existed since the adult was a minor...". 75-5-601(1). Without clarification, this language risks the possibility that all clients with conditions such as Down Syndrome or autism will come within the scope of SB 199. Instead, it is critically important that each client have the benefit of legal representation that ensures that they can be individually evaluated based on their capacities.

5. To substantiate this concern, I have reviewed the evidence submitted in many of my cases in which parents have sought full guardianship. In these guardianship cases involving children turning adults, all too often the descriptions of function are significantly lacking, even when the petitioners seek full guardianship. In many cases, the only evidence is a brief letter from a general practitioner that states something like this: "[name] has been under my care for many years, has a diagnosis of Down Syndrome, and his parents have been caring for him all of his life." Most parents, of course, have cared for their children throughout childhood, and a diagnosis by itself does not signify the functional limitations that would be appropriate to support a full guardianship. Here is another example of the kind of description I see: "has class III obesity, autism spectrum disorder, hypertension, cognitive disability, history of epilepsy, ADHD, auditory processing disorder and mixed learning disorder (reading, writing, math). Respondent requires assistance to complete activities of daily living, can perform ADL's but requires prompting by his sister. He is financially dependent on others and needs help with decision-making as he requires others to help explain topics and concepts." While this

description supports the need for assistance, it does not support the need for the level of deprivation of rights that would be associated with a full guardianship. In a similar recent case, the physician's letter stated: "…has Down syndrome, and has typical intellectual disability associated with that diagnosis….is not able to live independently, manage money, understand medical decision making, or attend to daily needs without supervision." Here, too, my client needed assistance but not at the level of a full guardianship.

6. My concern is that without representation and individualized assessment, cases such as these will result in an order of full guardianship based on "severe intellectual disability." That level of rights restrictions is often unnecessary and inappropriate for the clients I represent.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 17th day of April, 2025 at Salt Lake City, Utah

*Leslie Francis*
Leslie Francis (Apr 17, 2025 17:40 PDT)

Sincerely,
Leslie Francis
Bar # 3930