IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DISABILITY LAW CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>SPENCER COX, GOVERNOR OF THE STATE OF UTAH, in his official capacity, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00307-RJS<br><br>District Judge Robert J. Shelby |

Now before the court is Plaintiff Disability Law Center (DLC)'s Rule 59(e) Motion for Reconsideration.[1] For the reasons explained below, the Motion is DENIED.

## BACKGROUND

This case arises from Utah Senate Bill 199 (S.B. 199), a bill that establishes "a new guardianship process for individuals classified as having severe intellectual disabilities."[2] Governor Spencer Cox signed S.B. 199 on March 27, 2025, and it was set to take effect on May 7, 2025.[3] The parties stipulated to stay enforcement of S.B. 199 until this court adjudicated DLC's Motion for Preliminary Injunction.[4]

DLC brought this suit to challenge S.B. 199 as a violation of the federal Constitution, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation

---

[1] Dkt. 58, *Plaintiff's Motion for Partial Reconsideration and to Alter or Amend Judgment under Fed. R. Civ. P. 59(e)* (*Motion*).

[2] Dkt. 1, *Complaint for Declaratory Judgment and Injunctive Relief* (*Complaint*) ¶ 43.

[3] *Id.* ¶¶ 4, 43.

[4] Dkt. 24, *Minute Entry*.

Act.[5] The State Court Defendants—Chief Justice Durrant, State Court Administrator Gordon, the Utah Judicial Council, and the Utah Administrative Office of the Courts—filed a Motion to Dismiss for lack of subject matter jurisdiction.[6] The State Defendants—Governor Spencer Cox and the State of Utah—filed their own Motion to Dismiss for lack of subject matter jurisdiction.[7]

On July 22, 2025, after the benefit of oral argument, the court granted both Motions, dismissed the case without prejudice for lack of subject matter jurisdiction, and denied as moot DLC's Motion for Preliminary Injunction as moot.[8] DLC now seeks reconsideration of the court's decision to dismiss the ADA claim against the State of Utah (Motion).[9] The Motion is fully briefed and ripe for review.[10]

## LEGAL STANDARDS

Federal Rule of Civil Procedure 59(e) allows a party to file a "motion to alter or amend a judgment."[11] Motions for reconsideration may only be granted based on "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or

---

[5] *Complaint* ¶¶ 116–73. Specifically, DLC asserted six causes of action: (1) a violation of Title II of the ADA against the State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts; (2) a violation of Section 504 of the Rehabilitation Act against the State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts; (3) a procedural due process claim under the Fourteenth Amendment against Governor Cox, Chief Justice Durrant, and State Court Administrator Gordon; (4) a substantive due process claim under the Fourteenth Amendment for deprivation of physical liberty against Governor Cox, Chief Justice Durrant, and State Court Administrator Gordon; (5) a substantive due process claim under the Fourteenth Amendment for deprivation of right to intimate association against Governor Cox, Chief Justice Durrant, and State Court Administrator Gordon; and (6) a vagueness claim under the Fourteenth Amendment against Governor Cox, Chief Justice Durrant, and State Court Administrator Gordon. *Id.* The only claim relevant here is the ADA claim against the State of Utah. *Motion* at 1.

[6] Dkt. 28, *Motion to Dismiss Amended Complaint and Memorandum in Support*.

[7] Dkt. 35, *State Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1)* (*State Defendants' 12(b)(1) Motion*).

[8] Dkt. 55, *Memorandum Decision and Order* (*Dismissal Order*); *see also* Dkt. 54, *Minute Entry*.

[9] *Motion*.

[10] Dkt. 61, *State Defendants' Opposition to Plaintiff's Motion for Partial Reconsideration and to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e)*; Dkt. 62, *Plaintiff's Reply Motion for Partial Reconsideration and to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e)* (*Reply*).

[11] Fed. R. Civ. P. 59(e).

2

prevent manifest injustice."[12]  "Thus, a motion for reconsideration is appropriate where the court misapprehended the facts, a party's position, or the controlling law."[13]  DLC argues the court committed "clear error."[14]  Clear error occurs when a decision is "an arbitrary, capricious, whimsical, or manifestly unreasonably judgment."[15]  As the Tenth Circuit has cautioned:

> [A] motion for reconsideration . . . [is an] inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.  Absent extraordinary circumstances, . . . the basis for the second motion must not have been available at the time the first motion was filed. . . .  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.[16]

## ANALYSIS

In the Dismissal Order, the court found DLC failed to meet its burden to establish standing to sue the State of Utah.[17]  DLC seeks the court's reconsideration of this finding, arguing (1) the court erred by concluding DLC abandoned redressability and traceability arguments, and (2) the court generally erred in finding it lacked jurisdiction.  Neither DLC's

---

[12] *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995); *see also Callahan v. Commc'n Graphics, Inc.*, 657 F. App'x 739, 745 (10th Cir. 2016) ("A Rule 59(e) motion may be granted only if the movant establishes: (a) an intervening change in controlling law, (b) the availability of new evidence, or (c) the need to correct clear error or prevent manifest injustice.").

[13] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[14] *Motion* at 2.

[15] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001) (citation omitted); *see also Syntroleum Corp. v. Fletcher Int'l, Ltd.*, No. 08-cv-384, 2009 WL 761322, at *1 (N.D. Okla. Mar. 19, 2009) (explaining clear error "normally requires the definite and firm conviction that a mistake has been committed based on the entire evidence, or that a particular factual determination lacks any basis in the record" (citation omitted)).

[16] *Servants of the Paraclete*, 204 F.3d at 1012; *see also, e.g.*, *United States v. Koerber*, 966 F. Supp. 2d 1207, 1211–12 (D. Utah 2013) (denying motion for reconsideration when the legal arguments and facts in motion for reconsideration were available at the time of the original motion); *Albright v. Att'ys Title Ins. Fund*, No. 2:03-cv-00517, 2008 WL 376247, at *2 (D. Utah Feb. 11, 2008) (denying motion for reconsideration when plaintiffs "merely disagree with the order, restate their previous arguments and assert new arguments that were available to them at the time of the original briefing on this issue"); *Scalia v. Beantown Painting, Inc.*, No. 2:19-cv-00353, 2020 WL 9256556, at *1 (D. Utah Dec. 29, 2020) ("Motions to reconsider are not to be used as a second chance when a party has failed to present its strongest case in the first instance." (citation omitted)).

[17] *Dismissal Order* at 17, 26–28.

arguments nor the court's review of the Dismissal Order persuades the court that it committed clear error.

### I. The Court Did Not Err in Relying on Footnote 5 as DLC's Sole Attempt to Satisfy Its Burden to Show Redressability.

DLC contends the court misapprehended DLC's position concerning its standing to bring an ADA claim against the State of Utah.[18] DLC takes issue with the court's reliance on a footnote in DLC's Opposition to the State Defendants' 12(b)(1) Motion to Dismiss. In relevant part, the footnote states, "Defendants briefly argue that DLC cannot show redressability because Defendants do not implement or enforce S.B. 199 . . . This argument mirrors Defendants' argument that the *Ex Parte Young* exception does not apply because Governor Cox does not enforce the law."[19] Because the court found DLC's arguments under *Ex parte Young* unpersuasive, the court determined DLC had not met its burden to establish the closely related redressability element of standing.[20]

DLC fails to raise any argument compelling an alternative conclusion. DLC misapprehends the court's reliance on the footnote in question. DLC maintains the court "relied on a single footnote to, in effect, find that Plaintiff had abandoned its arguments as to standing for its ADA claim."[21] But the court did not deem the footnote as evidence of DLC abandoning its ADA claim altogether. Rather, the court relied on the footnote because it was the lone instance of DLC attempting to establish the redressability element of standing as to *any* of the State Defendants. "Redressability" appears nowhere else in DLC's brief opposing the State

---

[18] *See generally Motion*; *Reply*.

[19] Dkt. 45, *Plaintiff's Opposition to State Defendants' Motions to Dismiss (Dkt. 34 & 35)* (*Opposition to State Defendants' 12(b)(1) Motion*) at 9 n.5.

[20] *Dismissal Order* at 32–38.

[21] *Motion* at 3; *see also Reply* at 1–2 ("The Court nevertheless dismissed the ADA claim against the State on the basis of this passing reference in a footnote, in effect deeming this claim abandoned absent Plaintiff's clear intent.").

Defendants' Motion to Dismiss,[22] even though the State Defendants raised the issue with respect to *all* State Defendants.[23]

As the court mentioned throughout the Dismissal Order, DLC had the burden to establish standing on each of its claims.[24] The court cannot find DLC met its burden by way of making related arguments about the non-application of the Eleventh Amendment as to the State of Utah on the ADA claim—arguments which the court expressly acknowledged in the Dismissal Order[25]—because properly establishing the elements of standing is an "irreducible constitutional minimum" for there to be a justiciable case or controversy under Article III.[26] As DLC correctly points out, whether the State of Utah abrogated its sovereign immunity with respect to DLC's ADA claim is indeed "subject to its own analysis" separate from asserting standing.[27] But that is precisely the point—the court declined to reach that analysis because DLC otherwise failed to establish standing on its claims, including the ADA claim as to the State of Utah.[28]

---

[22] *See generally Opposition to State Defendants' 12(b)(1) Motion*.

[23] Contrary to DLC's position, the State Defendants raised redressability as to "the State Defendants" broadly before specifically arguing Governor Cox in particular lacks connection to S.B. 199. *State Defendants' 12(b)(1) Motion* at 17 ("The Court should also dismiss DLC's claims against the State Defendants because an injunction prohibiting them from enforcing SB199 will not redress any alleged injuries. Specifically, DLC has not alleged the State Defendants are responsible for implementing or enforcing SB199.").

[24] *Dismissal Order* at 6, 17, 25 n.137; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[25] *Dismissal Order* at 27–28.

[26] *Lujan*, 504 U.S. at 560.

[27] *Motion* at 4; *see also Sanchez v. Torrez*, 763 F. Supp. 3d 1309, 1315–17 (D.N.M. 2025) (discussing redressability, causation, and then the Eleventh Amendment in the context of *Ex parte Young*); *Yelapi v. DeSantis*, 525 F. Supp. 3d 1371, 1378–80 (N.D. Fla. 2021) (considering first whether the plaintiff's injury was caused by and fairly traceable to the state defendants and then later addressing whether the plaintiff's ADA claim abrogated Eleventh Amendment immunity).

[28] It is true DLC does not explicitly mention "causation" in the footnote in question. *Motion* at 7; *see also Opposition to State Defendants' 12(b)(1) Motion* at 9 n.5. Causation and redressability often go together when determining whether a Plaintiff "that is not the object of a government regulation" has Article III standing. *See Diamond Alt. Energy, LLC. v. Env't Prot. Agency*, 145 S. Ct. 2121, 2134 (2025) ("With respect to causation (and redressability), a court must conclude that third parties will likely react to the government regulation (or judicial relief) in predictable ways that will likely cause (or redress) the plaintiff's injury." (internal quotation marks omitted)). The court clarifies that DLC's failure to assert redressability as to the State of Utah prevented it from carrying its burden to establish standing.

The court understood the *Ex parte Young* Eleventh Amendment analysis specifically related to Governor Cox's role in this suit.[29] But as the court explained, "[e]ven assuming DLC has adequately alleged an organizational injury, DLC must still demonstrate the injury is fairly traceable to *Defendants'* conduct and can be redressed by this court."[30] Throughout its briefing, DLC failed to adequately counter Defendants' theory of the case with respect to which parties are ultimately causing DLC's alleged injuries through S.B. 199 and in what ways the court can redress those injuries as to those parties. This is true notwithstanding DLC's separate arguments about the Eleventh Amendment, which nowhere mention "redressability" or otherwise clarify how a ruling against the State of Utah would ameliorate DLC's alleged organizational injuries. Accordingly, DLC has failed to establish the court committed clear error in finding DLC failed to establish redressability.

## II. The Court Cannot Consider DLC's New Redressability Arguments in a Motion for Reconsideration.

DLC now advances several redressability arguments, including "injunctive relief will prevent the State from enacting S.B. 199," declaratory relief "will redress DLC's injuries by supplying a 'highly persuasive' federal court decision about the law's invalidity in state court," and "a declaration that S.B. 199 violates the ADA would provide relief to DLC even if State Defendants do not fully halt all implementation of S.B. 199."[31] But a motion for reconsideration is an inappropriate vehicle to advance these new arguments.[32] DLC states these arguments were

---

[29] *Dismissal Order* at 24 ("Furthermore, as DLC appears to concede, the *Ex parte Young* exception cannot not apply to the State of Utah itself. Accordingly, the court confines its analysis of the *Ex parte Young* exception to considering whether it applies to Governor Cox.").

[30] *Id.* at 23 (emphasis added).

[31] *Reply* at 3–4 (citations omitted); *see also Motion* at 8–10.

[32] *See Servants of the Paraclete*, 204 F.3d at 1012.

"alleged in the Complaint."[33] But this cuts against DLC's position—it supports a finding that these arguments were available to DLC, but it simply failed to make them. After all, they appear nowhere in DLC's Opposition to the Motion to Dismiss. In this circumstance, the court sees no reason why these arguments could not have been raised in prior briefing, and the court may not consider them now.[34]

## CONCLUSION

For the foregoing reasons, DLC's Motion for Reconsideration is DENIED.[35]

SO ORDERED this 14th day of November 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[33] *Reply* at 4.

[34] *See Gynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 101 (citation modified) (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

[35] Dkt. 58.